439 So.2d 670 (1983)
Kathleen KEYES
v.
GUY BAILEY HOMES, INC.
No. 54095.
Supreme Court of Mississippi.
July 27, 1983.
Rehearing Denied November 2, 1983.
William P. Featherston, Jr., Jackson, for appellant.
Stephen Younger, Jackson, for appellee.
En Banc.
PRATHER, Justice, for the Court:
This appeal results from a decision of the Circuit Court of the First Judicial District of Hinds County, which sustained a motion to dismiss submitted by the appellee, Guy Bailey Homes, Inc. Kathleen Keyes, the appellant, had previously filed a two-count complaint. One count charged the appellee with a breach of an implied warranty in the construction of her home, while the other count alleged negligence in construction of the house on the part of the appellee. The motion to dismiss was based on a lack of privity between the parties.
The pleadings in this case revealed that the appellee, Guy Bailey Homes, Inc., constructed a house in Jackson which was first sold to Troy Gerald Fulgram on August 7, 1975. In turn, Fulgram sold the house to the appellant Keyes on June 1, 1979. After moving into the house, Keyes allegedly discovered a latent defect, which consisted of a *671 cracked foundation. She then filed this lawsuit.

I.
The issue before the Court is whether a builder-vendor of a home may be held liable on the basis of negligence or the breach of an implied warranty to a second or subsequent purchaser of a home. Under existing Mississippi case law, privity of contract between the builder and the purchaser of a permanent structure on real estate is a prerequisite to a viable cause of action. After lengthy consideration, we now believe that that rule must be abolished for it promotes an injustice against remote purchasers and it is not based on sound reasoning.
The pertinent Mississippi law is stated in three cases. First, in Oliver v. City Builders, Inc., 303 So.2d 466 (Miss. 1974), a divided court ruled that the doctrine of strict liability could not be employed to impose liability against a builder-vendor in favor of remote purchasers of a permanent structure on real estate for the faulty construction of the foundation. Five judges did agree, however, that, as between a builder-vendor of a new home and his vendee, there is an implied warranty that the home was built in a workmanlike manner and suitable for habitation. Id. at 470. See Recent Decisions, Courts  Strict Liability in Tort for the Builder-Vendor for Property Damage Caused by Structural Defects, 46 Miss.L.J. 510 (1975).
Subsequently, in Brown v. Elton Chalk, Inc., 358 So.2d 721 (Miss. 1978), Justice Walker, relying solely on the Oliver case above, clearly stated the narrow grounds upon which a purchaser of a home could recover against a builder-vendor for breach of an implied warranty. A party filing such a suit must allege in his declaration (1) that the house when purchased was new, and (2) that the plaintiff was the first purchaser. Id. at 722.
The most recent Mississippi case concerning this issue is Hicks v. Greenville Lumber Co., Inc., 387 So.2d 94 (Miss. 1980). Once again, relying solely on Mississippi precedent, the Court ruled that a second or remote purchaser could not recover, on the basis of strict liability or implied warranty, for a latent defect in a home against the builder-vendor.[1]

II.
The current trend in other jurisdictions extends protection to remote purchasers who have no contractual relationship or privity with the builder-vendor. For example, where a remote purchaser can prove negligence on the part of the builder-vendor which results in foreseeable injury or loss to the remote purchaser, a remote purchaser has been entitled to recovery for damages. See, e.g. Terlinde v. Neely, 275 S.C. 395, 271 S.E.2d 768 (1980); Newman v. Tualatin Development Co., Inc., 287 Or. 47, 597 P.2d 800 (1979); Simmons v. Owens, 363 So.2d 142 (Fla.App. 1978); Coburn v. Lenox Homes, Inc., 173 Conn. 567, 378 A.2d 599 (1977); Wright v. Creative Corp., 30 Colo. App. 575, 498 P.2d 1179 (1972); Annot., 10 A.L.R. 4th 385 (1981). And, the privity barrier has also been removed in recent cases based on the implied warranty theory. See, e.g., Hermes v. Staiano, 181 N.J. Super. 424, 437 A.2d 925 (1981); Wagner Constr. Co., Inc. v. Noonan, 403 N.E.2d 1144 (Ind. App. 1980); Moxley v. Laramie, 600 P.2d 733 (Wyo. 1979). In light of this new substantial trend of authority, we think it worthwhile to reexamine our past rulings on this issue.

III.
The purchase of a home is quite frequently the most important and expensive investment that a family makes. Yet, most purchasers *672 simply do not have the knowledge or expertise necessary to discover many defects. They must instead rely upon the honesty and expertise of the builder. Consequently, if the home is poorly constructed with latent defects, the purchaser may very well be subjected to a major financial catastrophe against which he has no practical means of protecting himself.
Under such a scenario, it is rather obvious that the courts must fashion some legal framework in which to protect innocent purchasers. Accordingly, we have already recognized that a first purchaser should be able to recover damages from the builder if the builder was in some way at fault for the loss. That is how it should be. Certainly, an innocent purchaser should not be forced to sustain a heavy financial loss when the builder, through his own negligence or his own failure to construct the house in a workmanlike manner, caused the defect.
But, our past decisions have unfortunately denied this same protection to second or subsequent purchasers. Yet, we know of no reasonable justification for this distinction. The existing law simply permits a wrong without a remedy. One of the better illustrations of the many examples in which injustice may result was stated in the case of Moxley v. Laramie, noted above, in the following language:
Let us assume for example a person contracts construction of a home and, a month after occupying, is transferred to another locality and must sell. Or let us look at the family which contracts construction, occupies the home and the head of the household dies a year later and the residence must, for economic reasons, be sold. Further, how about the one who contracts for construction of a home, occupies it and, after a couple of years, attracted by a profit incentive caused by inflation or otherwise, sells to another. No reason has been presented to us whereby the original owner should have the benefits of an implied warranty or a recovery on a negligence theory and the next owner should not simply because there has been a transfer. Such intervening sales, standing by themselves, should not, by any standard of reasonableness, effect an end to an implied warranty or, in that matter, a right of recovery on any other ground, upon manifestation of a defect. The builder always has available the defense that the defects are not attributable to him. [600 P.2d at 736].

IV.
However, if this Court does consider some change in the present law, will we unfairly surprise the building industry and subject its members to any injustice. Certainly, it is desirable to apply the law consistently so that individuals and businesses will be able to plan their affairs with assurance against unfair surprise. But, we believe that no harm will result to the business industry through a change in this law by abrogating the requirement of privity. Two recent cases tell us why.
In Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), the Court overruled prior case law which had granted immunity in tort suits to state and administrative agencies. However, "unfair surprise" considerations led the Court to provide correctly that the agencies be granted until July 1, 1984, to obtain liability insurance or to make such other arrangements as might be appropriate to be prepared for this new exposure to suit. Thus, the Court recognized that unfair surprise could result from imposing a new "primary rule" which would obligate state and municipal agencies for the first time to exercise reasonable care in the performance of their duties.
By contrast, the case of Tideway Oil Programs v. Serio, 431 So.2d 454, (Miss. 1983), overruled rulings in previous case law, but did not change the primary rules under which the actions of citizens are to be governed. The Tideway decision held that punitive damages could be awarded for the first time in chancery courts. Of course, punitive damages had always been permitted against individuals who committed grossly negligent acts. The change, referred to as a remedial rule, simply enlarged *673 the types of courts in which an individual guilty of grossly negligent conduct could be reprimanded.
When we consider what kind of rules we are changing, whether primary or remedial, we can plainly see that no unfair surprise will result to the building industry. The builder already owes a duty to construct the home in a workmanlike manner and to construct a home which is suitable for habitation. If we extend potential liability of the builder to subsequent purchasers, the builder still is burdened only with the duty to construct the home in a workmanlike manner, etc. In other words, no greater effort will be imposed on the builder to protect himself. This change will not affect the primary rules by which his activity is governed. Instead, the remedial rule will be enlarged to strengthen enforcement of the so-called primary rule  the duty to construct the home in a workmanlike manner.
The same reasoning is true with respect to the homebuilder's potential liability on a negligence theory. Since the doctrines of caveat emptor and merger no longer stand in this jurisdiction, the builder of a house is required to exercise reasonable care in the construction of said house. If we extend the potential liability of builders to remote purchasers on the theory of negligence, the builder is still under the same requirement to exercise reasonable care. If the builder exercises reasonable care, he will not be liable on the basis of negligence to a successful lawsuit by either the first purchaser or subsequent purchaser. His burden is no greater. Thus, a change in the remedial rules has been effected, while in no way will overruling the past case law change the primary rules by which the builder is governed.
Therefore, under this reasoning process, we are not forced to apply the rule change prospectively, as we were forced to in Pruett above. Instead, our abolition of the privity requirement may have full force and effect to protect subsequent purchasers now.

V.
Some may argue that the removal of the privity requirement is a subject more properly addressed by our legislature. However, we believe that the legislature has already addressed this problem by enacting a broad statute on this very subject. Section 11-7-20 of the Mississippi Code Annotated (Supp. 1982) specifically provides that:
In all causes of action for personal injury or property damage or economic loss brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action. (Emphasis added).
A plain reading of the statute clearly suggests that it was the legislative intent to remove the privity requirement in all cases. We choose to do so now.

VI.
Nothing in today's ruling enlarges the time within which an action for faulty construction must be brought. Under our law, suits of this sort are governed by a ten year statute of limitations. Miss. Code Ann. § 15-1-41 (Supp. 1982). Prior to today, that statute of limitations was gratuitously shortened if the first purchaser sold the home to a third party. Under today's ruling, the homebuilder's potential exposure continues for ten years, without regard to how many subsequent purchasers there may be, and for ten years only.
REVERSED AND REMANDED FOR TRIAL.
PATTERSON, C.J., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and ROBERTSON, JJ., concur.
WALKER and BROOM, P.JJ., dissent.
WALKER, Presiding Justice, dissenting:
I respectfully dissent from the opinion of the majority which overrules three recent cases of this Court. Brown v. Elton Chalk, Inc., 358 So.2d 721 (Miss. 1978); Hicks v. *674 Greenville Lumber Company, Inc., 387 So.2d 94 (Miss. 1980); and Oliver v. City Builders, Inc., 303 So.2d 466 (Miss. 1974).
My first objection is that the Court has acted without adversary briefs, and on the brief of appellant which does no more than cite the three above cases and Mississippi Code Annotated section 11-7-20 (Supp. 1982). The Code section relied upon by the appellant became law on April 27, 1976, after the home in question had been constructed.[1] Therefore, it would have no application to this case. The balance of appellant's brief is simply a few lines of argument that "[T]he rule limiting the remedy to the first purchaser of the house is extremely unfair to a second purchaser of the house that happens to discover the latent defect." The inadequacy of the appellant's brief is compounded by the fact that the appellee has failed to file any brief whatsoever in this case.
I strongly feel that the rights of the home building industry of this state are being so adversely affected by this decision, that it is incumbent upon us to ask for amicus curiae briefs or adversary briefs from the home building association on the question involved herein. Our failure to do this will affect a multimillion dollar industry of this state which is vital to the state's economy and the thousands of working people dependent upon it. The opinion changes the rule in the middle of the game as to those home builders who built homes prior to the enactment of section 11-7-20 on April 27, 1976. The potential financial liability of home builders is considerably higher under the holding of the majority opinion than it was under the holding of Brown, Hicks and Oliver, supra. The home builders had a perfect right to rely on those decisions and to protect themselves from the liability those opinions imposed upon them. Under the majority opinion, they are now faced with additional potential financial liability for which they have made no provision. To me, this is grossly unfair.
I am also of the opinion that the trial court correctly held that the complaint did not state a cause of action. That complaint simply states:
4.
On August 7, 1975, Defendant sold the aforesaid house to Troy Gerald Fulgham, et ux.
5.
On June 1, 1979, Plaintiff purchased said house from Troy Gerald Fulgham, et ux.
6.
In September, 1979, Plaintiff discovered a latent defect in said house, which defect consisted of a severely cracked foundation.
7.
Defendant, by constructing the aforesaid house, impliedly warranted that said house was built in a workmanlike manner and that it was suitable for habitation.
8.
Defendant breached the aforesaid implied warranty that the house was built in a workmanlike manner and that it was suitable for habitation and as a direct and proximate result of the aforesaid breach of implied warranty that the house was built in a workmanlike manner and that the house was suitable for habitation, the Plaintiff has been damaged.
In Count II of the Declaration, he readopts what he earlier said in Count I, and states:
10.
Defendant was negligent in the construction of the aforesaid house.
11.
That as a direct and proximate result of the negligence of the Defendant in the *675 construction of Plaintiff's house as aforesaid, the Plaintiff has sustained damages.
The appellant then prays for a judgment in the amount of $100,000.00.
At no place in the declaration does the plaintiff allege that the home is not suitable for habitation nor does it allege in what regard the appellant was negligent in the construction of the home or in what way they have been damaged by the cracked foundation which is not an uncommon occurrence in and around the City of Jackson.
In conclusion, I would either call for briefs from the home building industry association, or I would hold that the failure of the appellee, Guy Bailey Homes, Inc., to file a brief was a confession of the errors alleged by the appellant, without disrupting and changing the law, and would reverse and remand this case for trial. In such a case the reversal would simply be the law of the case and would not have the devastating effect upon the home building industry as does the present majority opinion.
My preference over the alternatives mentioned above is to recognize Brown, Hicks and Oliver as the law of this State and affirm the judgment of the trial court sustaining the motion to dismiss the complaint.
BROOM, P.J., joins this dissent.
NOTES
[1] The Mississippi Supreme Court has eliminated the requirement of privity of contract as an essential part of a cause of action, in food and beverage cases. Coca Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305 (1927); Biedenharn Candy Co. v. Moore, 184 Miss. 721, 186 So. 628 (1939). Privity of contract is not essential in a suit by the consumer against a manufacturer of other personal property. State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss. 1966). Yet, our Court maintained the requirement of privity of contract in realty transactions.
[1] The appellant alleged in its brief that the home was constructed by Guy Bailey Homes, Inc. prior to August 7, 1975.