**Albert COLLINS, Plaintiff,**

v.

**TRINITY INDUSTRIES, INC. and Southern Company Services, Inc., Defendants.**

**Civ. A. No. S85–0784(R).**

United States District Court, S.D. Mississippi, S.D.

Oct. 19, 1987.

Joe Sam Owen, H. Rodger Wilder, Gulfport, Miss., for plaintiff.

Billy W. Hood, Gulfport, Miss., for defendant Trinity.

Roy C. Williams, Pascagoula, Miss., James H. Miller, III, Robert M. Collins, Birmingham, Ala., for defendant Southern Services.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge.

This matter is presently before the Court on the Motions for Summary Judgment filed by the defendants, Southern Company Services, Inc. (Southern Services) and Trinity Industries, Inc. (Trinity). Southern Services and Trinity contend *inter alia* that Miss.Code Ann. § 15–1–41 (1972) precludes the plaintiff, Albert Collins, from maintaining the present cause of action. The plaintiff alternatively contends that § 15–1–41 does not govern the instant action, but that basic negligence/products liability principles should control. For the reasons more fully set out herein, this Court is of the opinion that the defendants' Motions for Summary Judgment are well taken and should be granted.

## FACTS

Mississippi Power Company (Mississippi Power) is the owner and operator of Plant Jack Watson, an electrical generating facility located in Gulfport, Mississippi. Generating Unit No. 5 at Plant Jack Watson was constructed in part as the result of an agreement between Mississippi Power and Ingalls Iron Works Company, Inc. (Ingalls Iron Works).[1] Ingalls Iron Works con-

---

1. On June 23, 1980, Ingalls Iron Works was sold by its shareholders to Trinity. It is this Court's opinion that the instant action turns on the interpretation of Miss.Code Ann. § 15–1–41 (1972), therefore no legal distinction need be

tracted with Mississippi Power to provide for the fabrication, delivery and erection of duct work, duct support steel and forced draft fans for Unit No. 5. The duct work fabricated and erected by Ingalls Iron Works for Unit No. 5 was designed by Southern Services and included a caged ladder, the subject of this litigation. Ingalls Iron Works performed the work pursuant to the agreement and it is contended that Mississippi Power accepted the work performed on or before September 29, 1972.[2]

On October 30, 1982, the plaintiff, while attempting to descend the ladder in question, fell approximately four floors sustaining serious injuries. On June 14, 1985, the plaintiff filed the present action against Trinity alleging various causes of action for the defective design of the subject ladder. Thereafter, Southern Services was also named as a defendant.

The current version of Miss.Code Ann. § 15–1–41 (1972), effective from and after January 1, 1986, provides that "... any cause of action accruing prior to January 1, 1986, shall be governed by Chapter 350, Laws of 1972." The applicable version of Miss.Code Ann. § 15–1–41 (1972) is as follows:

No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, and no action may be brought for contribution or indemnity for damages sustained on account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm or corporation performing or furnishing the design, planning, supervision of construction, or construction of such improvements to real property more than ten (10) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.

This limitation shall not apply to any person, firm or corporation in actual possession and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvements causes injury.

This limitation shall not apply to actions for wrongful death.

The provisions of this section shall apply to causes of action accruing prior to June 1, 1972, but shall not revive any cause of action barred under existing law as of that date.

The Supreme Court of Mississippi has construed this statute in several decisions which merit discussion. In the earliest, yet perhaps most significant decision, the Mississippi Supreme Court determined the constitutionality of the statute. *Anderson v. Wagner*, 402 So.2d 320 (Miss.1981). The case involved personal injuries sustained by Shane Anderson, a minor, when he thrust his arm through a glass door at Murphy Elementary School. The lower court dismissed the case since more than ten years elapsed from the date of construction and acceptance of the building until the date of the injury, and the plaintiffs appealed on

made with regard to the nature of the relationship between Ingalls Iron Works and Trinity.

**2.** Deposition of Mr. Robert Jinks, pp. 12–13. MR. OWEN: Okay. Is he going to testify as an expert? MR. HOOD: No. For the purposes of the record, as we have discussed, Ingalls, old Ingalls had a record problem. He was one of the few employees of old Ingalls that is still around, so to speak. He has assisted us in going back through what records we could put together in coming up, Joe, with a completion date and an acceptance date by the power company on this ladder. And that's basically in a nut shell what he knows. He knows of the ladder. He has looked at the blueprints. Mr. OWEN: Q. Can you tell me the completion date? A. I can give you an approximation. Q. That's fine. A. According to the pay estimates, it was on or before September 29, 1972. Q. Can you tell me the acceptance date, approximate? A. As I said, what appeared to be the last pay estimate that dealt with the structural steel on which the ladder was a part. The structured steel was erected a hundred percent on or before 9/29/72.

the grounds that Miss.Code Ann. § 15–1–41 (1972) violated Article III, Section 24, and Article IV, Section 87 of the Miss. Constitution of 1890. The Supreme Court examined decisions from various states which had addressed the constitutionality of such statutes; significantly, the majority of the states upheld the statute, as did the Supreme Court of Mississippi, stating:

> The class of persons covered by the statute is large and we think the statute is a general law rather than local. Further, definition of the class to which the section refers is a reasonable exercise of legislative authority. Therefore, we are of the opinion that the statute is constitutional and was correctly applied by the lower court.

*Anderson*, 402 So.2d at 324.

In the next case, the Supreme Court addressed a question certified to it by the Fifth Circuit. *Deville Furniture Company v. Jesco, Inc.*, 423 So.2d 1337 (Miss. 1983). The case arose from an agreement between Deville Furniture Company (Deville) and Jesco, Inc. (Jesco), wherein Jesco constructed a furniture plant and, later, an addition to the plant, and problems with roof leaks subsequently occurred. Deville commenced a diversity action in district court six years and ten months after substantial completion and acceptance. The court sustained Jesco's motion for summary judgment on the basis of the six-year statute of limitations provided in Miss.Code Ann. § 15–1–49 (1972), and Deville appealed, contending that the ten-year statute of limitations of Miss.Code Ann. § 15–1–41 (Supp.1981) applied. In a decision which addressed the abolition of the doctrine of privity of contract and the history of § 15–1–41, including the 1972 amendment which changed the statute's application from patent deficiencies only to any deficiency, the Supreme Court of Mississippi determined that the ten-year statute of limitations of § 15–1–41 applied, rather than the six-year provision of § 15–1–49. Accordingly, the Fifth Circuit reversed the district court's decision in *Deville Furniture Company v. Jesco, Inc.*, 697 F.2d 609 (5th Cir.1983).

Two more recent cases which discuss the Mississippi Supreme Court's application of Miss.Code Ann. § 15–1–41 (1972) are *West End Corporation v. Royals*, 450 So.2d 420 (Miss.1984), and *Keyes v. Guy Bailey Homes, Inc.*, 439 So.2d 670 (Miss.1983). The *Keyes* suit involved a discovery of a latent defect in a house (a cracked foundation) by a second purchaser. The Mississippi Supreme Court determined that "... the home builder's potential exposure continues for *ten* years without regard to how many subsequent purchasers there may be, and for ten years only." *Id.* at 673. The *Royals* suit arose from property damage resulting from flooding that occurred from a drainage ditch behind the Royals' home. On appeal, the defendants-appellants claimed that the ten-year statute of limitations in § 15–1–41 barred the plaintiff-appellee's claim. But the Mississippi Supreme Court affirmed the Forrest County Chancellor, who determined that ownership of the ditch remained in the defendant-appellant, Universal Investment Corporation, holding "... § 15–1–41 does not provide the applicable statute of limitations where the owner is the builder." *Royals*, 450 So.2d at 424.

In *Royals* it is clear that the Mississippi Supreme Court determined that the Legislature not only intended to keep alive a cause of action against an owner, who was also the builder, but to further provide protection to architects, builders and others who, upon completing their work, relinquished control of the improvements to the owners.

In the instant action, this Court has been called upon to determine, as a matter of law, whether or not the actions of the defendants in designing, fabricating and erecting the caged ladder in question should be considered "construction or construction of an improvement to real property". This Court feels confident that it has the authority to construe the statutory issues involved. However, this Court recognizes that it is restricted primarily to legislative intent when determining whether or not certain actions fall within the intended purpose. *McKnight v. Dyer*, 331 F.Supp. 343 (N.D.Miss.1971). Consequently, such

an evaluation requires this Court to interpret the language provided in the statute by its ordinary usage. *Hill v. James,* 252 Miss. 501, 175 So.2d 176, 179 (1965). In determining the "ordinary" meaning of "construction or construction of an improvement to real property", this Court must necessarily focus on the latter half of the phrase (i.e., "improvement to real property"). It seems that the plaintiff is of the opinion that in order for something to be an "improvement to real property", the object or material in question must necessarily be a fixture. This Court does not take that view. Miss.Code Ann. § 15–1–41 (1972) does not utilize the word *fixture* in describing what an "improvement to real property" is, and therefore, an ordinary interpretation of the statute leads this Court to believe that an "improvement to real property" can be a fixture but that it does not have to be. This Court will not endeavor to determine if the acts of designing, fabricating and erecting the subject ladder relegate it to the status of a fixture, but rather, whether or not those acts constitute "construction or construction of an improvement to real property".

In addition to examining the Mississippi cases interpreting Miss.Code Ann. § 15–1–41 (1972), this Court has sought out other jurisdictions with statutes similar to Mississippi's and analyzed their interpretations of phrases similar to "construction or construction of an improvement to real property". The following is a brief collection of those decisions:

*Mora–San Miguel Electric Cooperative, Inc. v. Hicks & Ragland Consulting & Engineering Co.* [93 N.M. 175], 598 P.2d 218, 220 (Ct.App.NM 1979); "The Cooperative's first point of error is that ... the power line in question was not a 'physical improvement to real property.' We do not agree ... The word 'improvement' likewise has several meanings and as used in the context of Section 37–1–27, supra, the most applicable is 'the enhancement or augmentation of value or quality: a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.' Webster's Third New International Dictionary (Unabridged)."

*Washington Natural Gas Co. v. Tyee Construction Company* [26 Wash.App. 235], 611 P.2d 1378, 1381 (Wash. 1980): "Under the same analysis, the power lines are an improvement upon real property even though potentially subject to removal under some circumstances. The power lines add to the value of the property and enhance its use, and Tyee, being a contractor, is clearly within the class to be protected."

*Rosenberg v. Town of North Bergen* [61 N.J. 190], 293 A.2d 662, 666 (NJ 1972): "if the condition to which the Legislature addressed itself was this extension of potential liability, then there seems no reason not to include within the favor of the statute all to whom this condition may adhere whether they be planners and builders of structures, roads, playing fields or aught else that by broad definition can be deemed 'an improvement to real property.' We prefer to read the statute, consonant with what we thus judge to have been the legislative intent, as applying to all who can, by a sensible reading of the words of the act, be brought within its ambit. We therefore conclude that the statute does apply to the facts of this case."

*Kallas Millwork Corporation v. Square D Co.* [66 Wis.2d 382], 225 N.W.2d 454, 456 (Wisc. 1975): "Webster's Third International Dictionary, 1965, includes the following definition of 'improvement':

'[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.'

Similar definitions are found in 1 Bouvier's Law Dictionary (Rawles 3rd Rev., 1914), page 1517, and Black's Law Dictionary (West, Rev., 4th ed., 1968), page 890.

Under these commonly accepted usages, it is apparent that the high-pressure water pipe designed for fire protection, as a matter of law was 'an improvement to real property' within the meaning of sec. 893.155, Stats."

*Wiggins v. Proctor & Schwartz, Inc.,* 330 F.Supp. 350, 353 (ED Va 1971): "It was the machine which became the improvement to real property."

*Yakima Fruit and Cold Storage Co. v. Central Heating and Plumbing Co.* [81 Wash.2d 528], 503 P.2d 108, 110 (Wash. 1972). A refrigeration in a cold storage warehouse as an improvement to real estate.

*Fetterhoff v. Fetterhoff* [354 Pa.Super. 438], 512 A.2d 30, 31 (Pa.1986): "Likewise, there is no doubt an elevator shaft is an improvement to real property."

*Pacific Indemnity Co. v. Thompson–Yeager, Inc.,* 260 N.W.2d 548 (Minn. 1977): "The same common-sense interpretation should be made of the phrase 'improvement to real property' as it is used in the instant statute. Applying that definition to the facts of this case, we hold that the installation of the furnace by Yale constituted, as a matter of law, the construction of an improvement to real property."

### THE CAGED LADDER

The testimony of Robert Jinks, a former employee of Ingalls Iron Works, has been referred to by the defendants and the plain-·tiff in support of their positions concerning the subject ladder. Mr. Jinks testified by deposition that the initial design of the duct work for Unit No. 5 included the subject ladder. He further testified that Proposal Estimate Number 34, dated September 29, 1972, showed a total of 575 tons of steel being erected and that the subject ladder was included therein. The blueprints for the duct work and support steel for Unit No. 5 indicate that the subject ladder spanned from the 18–foot level to approximately the 88–foot level. It has been submitted that the actual caged part of the ladder ran from about the 25–foot level to almost the 63–foot level. Mr. Jinks testified that because of its length, the ladder had to be erected in two parts: one part ascending approximately two levels and one part descending approximately two levels. He further testified that before the erection, the ladder was in movable sections but that after the erection, the sections were fixed. He was of the opinion that the ladder was affixed to the structure either by being field welded or field bolted into place but that he had no personal knowledge concerning which of the two processes was utilized. Upon being asked if the ladder could be disassembled without tearing the structure down, Mr. Jinks testified that he imagined it could, but that the ladder itself might suffer some damage.

Richard Jacobs is a professional engineer retained by the plaintiff to provide his expert opinion concerning the subject ladder. He stated, by affidavit, that the ladder was not fabricated as part of the structure and that the ladder was not necessary for the stability or integrity of the building where the ladder is housed. It is Mr. Jacob's opinion that the ladder is not a component part of the building and that the ladder was erected in sections and can be dismantled or removed without any damage, alteration or modification to the building. Mr. Jacobs also stated that the ladder is not an improvement to the building but is only an item of personal property.

### ACCEPTANCE OF PERFORMANCE

This Court has been presented with affidavits and testimony of various individuals concerning the acceptance of the subject ladder by Mississippi Power.[3] Mr. J.K. Sokalski, the construction superintendent for Mississippi Power during the construction of Unit No. 5, stated that at the time he approved the final invoice on June 13, 1973, Mississippi Power had been occupying and using the duct support steel, including the vertical fixed ladders that were a part thereof, for several months.

Mr. J.C. Herring, a senior engineer for Mississippi Power from 1972 until commer-

**3.** *See supra* at note 2 for Mr. Jink's testimony concerning acceptance of the subject ladder.

cial operation of Unit No. 5 began in May, 1973, and Jim Neill, maintenance supervisor of the plant at the time commercial operation began, both stated that the fixed vertical ladders, as well as the duct support steel, were utilized by Mississippi Power several months before the plant began commercial operation.

### CONCLUSION

The testimony of Mr. Jinks, as well as the affidavits submitted by the defendants, overwhelmingly establishes that Mississippi Power accepted the duct support steel, including the fixed vertical ladders, of which the subject ladder was a part thereof, no later than May, 1973, when the plant began commercial operation.

The ladder in question is approximately seventy (70) feet in length. It was erected in sections and field bolted or field welded to the structure. The blueprints of the duct support steel for Unit No. 5 indicate that the subject ladder was designed as part of the overall project. The subject ladder was erected contemporaneously with all the other work contracted to be performed. The final payment of the work performed included the subject ladder. This Court acknowledges that Mr. Jinks testified that the subject ladder could be removed without damaging the structure. However, this Court is not convinced that a determination of whether or not something is "construction or construction of an improvement to real property" hinges on whether or not any part of a building or structure will be damaged upon the removal of objects or material affixed thereto. There can be little doubt that almost any type of object or material affixed to real property can somehow be removed without causing it damage. This Court has examined all of the Mississippi cases pertaining to Miss.Code Ann. § 15–1–41 (1972), as well as several cases from other jurisdictions, and is unable to find any indication that damage to the building or structure plays any part in the determination of whether or not objects or material erected thereon fall within the intent and meaning of "construction or construction of an improvement to real property".

Mr. Jacobs stated that the subject ladder was not an improvement to the building. However, this Court points out that the statute refers to the "improvement to real property". Although an improvement to a building quite assuredly falls within the meaning of an improvement to real property, the latter requires a much broader interpretation. The subject ladder is a small part of the overall work performed at Unit No. 5. It, along with the other pieces, formed the sum and substance of the work contracted by Mississippi Power, designed by Southern Services and fabricated and erected by Ingalls Iron Works.

This Court is of the opinion that the subject ladder falls within the meaning and intent of Miss.Code Ann. § 15–1–41 (1972), and because suit was initially filed on June 14, 1985, this action must be dismissed as time barred by the ten (10) year limitation period, and therefore, the defendants' Motions for Summary Judgment should be GRANTED.