563 So.2d 1371 (1990)
Charles A. McMICHAEL, Jr.
v.
NU-WAY STEEL AND SUPPLY, INC.
No. 07-CA-58897.
Supreme Court of Mississippi.
May 23, 1990.
Joe E. Roberts, Jr., Crymes G. Pittman, Cothren & Pittman, Hartwell T. Ashford, Jackson, for appellant.
Claire G. Mavar, James D. Holland, Upshaw Williams Biggers Page & Kruger, Jackson, for appellee.
Before DAN M. LEE, SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from the Circuit Court, First Judicial District, Hinds County, wherein the appellant, Charles McMichael, [hereinafter McMichael] filed a complaint against the appellee, Nu-Way Steel and Supply, Inc. [hereinafter Nu-Way Steel], based on injuries he sustained in a fall. The lower court granted Nu-Way Steel's motion for summary judgment based on the applicable statute of limitation, Mississippi Code Annotated, Section 15-1-41 (1972).[1]

STATEMENT OF THE FACTS
This case involves a slip and fall. Although the accident occurred more than six years ago, the issue regarding negligence still remains unanswered. We are not here to answer that question today, but we write simply to reiterate how important it is for a trial court to carefully examine all the evidence before granting a motion for summary judgment. The facts are necessarily detailed because the appellant alleges that the trial court erred in granting the summary judgment. Now, with this in mind, we turn to the facts.[2]
On May 10, 1984, McMichael was walking with two of his friends at Tracewood Village Apartments. One of his friends was a tenant of the complex. As they were walking along a flight of stairs, McMichael lost his balance and began falling. In an attempt to regain his balance, McMichael "took several steps backwards [sic] which led him back to the landing area where he regained his balance and leaned *1372 back against a guard rail placed at the outside ledge of the landing." When McMichael leaned on the rail, "it immediately gave way swinging downward as if hinged at the bottom, allowing [him] to fall backward to the ground approximately four (4) feet landing on his back upon some shrubbery at the bottom of the stairs." As a direct result of this fall, McMichael sustained serious permanent injuries.
On September 10, 1984, McMichael filed suit in the Hinds County Circuit Court naming Tracewood Associates d/b/a Tracewood Apartments,[3] George Krupp and Douglas Krupp as defendants. In this complaint, McMichael alleged negligence on the Defendants' part and requested damages for his injuries.
On February 3, 1987[4], two years and five months after the original complaint was filed, McMichael filed an amended complaint adding to the list of Defendants O'Rourke, Gossen, and Associates, Boley Construction Company of Mississippi, Inc. [hereinafter Boley MS], Boley Construction Company [hereinafter Boley Company], and Nu-Way Steel. In this amended complaint, McMichael alleged that O'Rourke, et al., was the architect of Tracewood Village Apartments [hereinafter Village Apartments]; Boley MS was a subsidiary of Boley Company, and they were the contractors of Village Apartments; Nu-Way Steel was the manufacturer of all guard rails supplied to and installed in the apartment complex and was the sub-contractor in the construction and installation of guard rails of Village Apartments. Moreover, this amended complaint alleged the same facts that were presented in the original complaint.
McMichael, in this amended complaint, also asserted that
[Nu-Way Steel], in performing their work in the manufacture, construction and installation in said apartment building, knowingly manufactured, constructed and installed railings on the aforesaid apartment complex with full knowledge that the same would not be fit for the purpose intended and said installation was known or should have been known, by said Defendant, to be defective at the time of installation. The negligent and defective installation of said railing was the proximate or contributing cause of the injuries to the Plaintiff herein set forth.
On March 6, 1987, Nu-Way Steel filed its Answer and Defenses to McMichael's complaint. It filed fourteen defenses, but, for purposes of this appeal, only one is important: "Any claim stated against this Defendant by the Amended complaint is barred by the applicable Statute of Limitations."
On May 15, 1987, Nu-Way Steel filed a Motion for Summary Judgment based on its Statute of Limitations defense. Specifically, Nu-Way Steel cited to MCA § 15-1-41, which states in part:
No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person arising out of any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property ... more than six years after written the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof... .[5]
Moreover, Nu-Way Steel also stated that it had completed the work prior to February *1373 11, 1977. According to Nu-Way Steel, "records indicate that all work was completed in relation to this project by [Nu-Way Steel] prior to December of 1975 or January of 1976."
In presenting its evidence in support of the summary judgment motion, Nu-Way Steel alerted the trial court to George Krupp's Affidavit where he stated that Tracewood Associates purchased Village Apartments four years after it was built.[6] Nu-Way Steel also presented Douglas Krupp's affidavit asserting the same. Furthermore, Nu-Way Steel also provided, as evidence, McMichael's response to the first summary judgment motion filed by the original defendants on May 21, 1987. In this particular document, McMichael admitted that the Village Apartments were built "in about 1975" and that Tracewood Associates purchased the complex four years after it was built.
Nu-Way Steel also included other evidence. It provided an affidavit of Richard L. Bowe, former president of Boley MS, who stated that he was familiar with the construction of the apartment complex from beginning to end. As a matter of fact, the job began on October 14, 1974, and the sub-contract agreement between Nu-Way Steel and Boley MS was dated on January 20, 1975.
Also, in this document Nu-Way Steel points to McMichael's admissions to allegations made in response to its summary judgment motion which was filed on June 10, 1987. In addition, Nu-Way Steel relied on McMichael's response that he lacked the knowledge to either admit or deny the statement that the work performed by Nu-Way Steel had been performed prior to February 11, 1977.
Nu-Way Steel then relies on the sub-contract agreement between it and Boley MS. This sub-contract provides for the final payment to be made to Nu-Way Steel within thirty days after the sub-contractor had performed his obligations under the contract. And, finally, Nu-Way Steel's seventh item, in establishing its right to summary judgment, was the affidavit of Charles T. King, Comptroller of Nu-Way Steel. In this affidavit, King said that the job was completed prior to January 1, 1977.
Before Nu-Way Steel presented all of this evidence in support of its summary judgment motion, McMichael, on June 10, 1987, filed his Response to the summary judgment motion. Included with his response McMichael stated that he relied on the complete court file; his affidavit; affidavit of Warnie Crawford Kennington, Jr.; and the original defendants' response to his second set of interrogatories and request for production.
McMichael elaborately puts forth evidence to demonstrate that a genuine issue of material fact existed. In his affidavit, for example, McMichael detailed the efforts he took in attempting to ascertain the names and addresses of all the individuals involved in constructing Village Apartments. He searched through interrogatories, depositions, and inquiries with individuals in the business. After he timely filed his complaint, he took a second set of interrogatories in search of the needed defendant. His interrogatories to the original defendants included the following:
Q. What is the name and address of the general contractor of Tracewood Village Apartments?
A. Defendants were not the owners of Tracewood Village Apartments at the time these apartments were built. However, defendants did conduct diligent inquiry but were unable to determine the name of the general contractor on the job.
Q. State the name and address of all steel fabricators of Tracewood Village Apartments:

*1374 (a) structural;
(b) miscellaneous metals; and
(c) ornamental metals.
A. Defendants were not the owners of Tracewood Village Apartments at the time these apartments were built. However, defendants did conduct diligent inquiry but were unable to determine the name of the steel fabricators on the job.
Q. State the name and address of all steel erectors of Tracewood Village Apartments:
(a) structural;
(b) miscellaneous metals; and
(c) ornamental metals.
A. Defendants were not the owners of Tracewood Village Apartments at the time these apartments were built. However, defendants did conduct diligent inquiry but were unable to determine the name of the steel erectors on the job.
Still unable to locate any information as to the sub-contractors, architects, etc., according to McMichael's affidavit, he went to the City of Jackson Permit Department. This search, however, did not reveal anything because he was informed that all the original plans stored on Jefferson [Street] prior to 1979 were destroyed in the 1979 flood. Only after extensive discovery did McMichael become aware that Nu-Way Steel was the sub-contractor and fabricator of the guard rail, and it was the necessary party defendant.
Also included with his response, McMichael included the affidavit of Warnie C. Kennington, Jr., Manager of Building Permit Division of the City of Jackson. His statement concurred with McMichael's in that no records or permits of the Village Apartments were found among its files. He also stated that at the time they were built the Village Apartments were not within the jurisdiction of the city permit department.
In his brief, McMichael points to other indications that a question of fact on a material issue existed. These included a letter acknowledgment dated March 6, 1986, that McMichael intended to bring Nu-Way Steel as a defendant. And, on May 7, 1986, he effected that intention and subsequently summons was executed.
As stated previously, the trial court granted the motion for summary judgment on July 7, 1987. On July 31, 1987, McMichael filed a Motion to Set Aside the Order granting Summary Judgment. Nu-Way Steel filed its Response on August 7, 1987. And, on August 10, 1987, the trial court filed its order denying motion to set aside order granting summary judgment. Finally, on November 13, 1987, the trial court dismissed with prejudice McMichael's claims against all defendants, including the original defendants and Nu-Way Steel, and dismissed without prejudice all cross-claims filed by these defendants. McMichael then timely filed his notice of appeal. Below is the assignment that we will address.

NU-WAY FAILED TO SUSTAIN THE BURDEN OF PROOF THAT IT BORE AS TO THE DATE FROM WHICH THE LIMITATION PROVISION OF SECTION 15-1-41 BEGAN TO RUN
Just recently this Court provided the following discussion of summary judgment:
In determining whether the trial court was proper in granting [a] Motion for Summary Judgment, we must conduct de novo review.
The law governing the grant or denial of a motion for summary judgment is well established, [as the Court] has explained repeatedly:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.

*1375 Issues of facts sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite.

Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984). See also, Allison v. State Farm Fire & Casualty Co., 543 So.2d 661, 663 (Miss. 1989); Clark v. Moore Memorial United Methodist Church, 538 So.2d 760, 762 (Miss. 1989); Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss. 1988); and Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983).
The movant is strapped with the burden of demonstrating that no genuine issue of fact exists while the non-movant is given the benefit of every reasonable doubt. By the same token, however, the non-movant cannot just sit back and remain silent, but he must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial. The non-movant, in generating an issue of fact sufficient to avoid an adverse rendering of summary judgment, cannot rely solely on his pleadings, which simply allege or deny a material fact. But, he must present `by affidavit or other wise set forth specific facts showing that there are indeed genuine issues for trial.' Stated another way, the non-movant must bring forward `significant probative evidence demonstrating the existence of a triable issue of fact.'
Newell v. Hinton, 556 So.2d 1037, 1041 (Miss. 1990) (citations omitted); see also Webster v. Mississippi Publishers Corp., No. 07-58732 (Miss.Sup.Ct. December 20, 1989).
With this in mind, it is appropriate to reiterate some dates. McMichael's fall occurred on May 10, 1984. He filed suit against the original defendants on September 10, 1984. On February 3, 1987, McMichael filed his amended complaint naming Nu-Way Steel as a defendant. In its motion for summary judgment Nu-Way Steel included affidavits asserting that all work in relation to the project was completed prior to December 1975 or January 1976. Tracewood purchased the apartments four years after they were completed  in essence no later than 1980. The most important date that still remains unknown, however, is the exact date the building was used or occupied by Country Club or when Country Club accepted the work.[7]
Another date that is of some significance is January 20, 1975, the day Nu-Way Steel and Boley MS entered into a sub-contract agreement. One condition in this contract was that Boley MS, when the job was completed, was to make its final payment to Nu-Way Steel within thirty days after Nu-Way had performed fully its obligations under the contract.
The comptroller of Nu-Way Steel also provided an affidavit for the appellee's in the case sub judice. He asserted that it was customary that final payment is received 30 to 60 days after a project is completed. And, payments for the work done in the case were received on February 27, 1976. Consequently, Nu-Way Steel may have completed the contract as early as December 27, 1975, or as late as January 27, 1976.
Although it seems clear that the construction was completed at this time, the issue turns on whether the statute of limitations had begun to toll at this point. The lower court stated that it was "uncontradicted in the evidence that the work performed ... was completed and accepted prior to 1977 ... In fact ... all work was completed ... prior to January of 1976." But, McMichael insists that Nu-Way Steel has neither offered "one shred of evidence" *1376 to show written acceptance of the apartment complex by the original owner nor established at what point the complex was actually occupied or used.
It is clear that this Court requires occupancy or acceptance of the building or improvement made thereon as the beginning point for the tolling of the statute of limitation. See, e.g., Fluor v. Cook, 551 So.2d at 898, 900 (Fluor built refinery for Pontiac Eastern Corporation in the late 1950's and Pontiac Eastern accepted the plant prior to February 18, 1958); Smith v. Fluor Corp., 514 So.2d 1227, 1228-229 (Miss. 1987) (same); Reich v. Jesco, Inc., 526 So.2d 550, 551-52 (Miss. 1988) (Construction company built chicken house in 1973 and plaintiff began actual occupancy or use of the building in 1973); Keyes v. Guy Bailey Homes, Inc., 439 So.2d 670, 670, 673 (Miss. 1983) (Contractor sold house to Buyer # 1 on August 7, 1975; Buyer # 1 sold to Buyer # 2 on June 1, 1979; therefore, claims continues for ten years after house was first accepted); Deville Furniture Co. v. Jesco, Inc., 423 So.2d 1337, 1338 (Miss. 1983) (Architect gave written notice of substantial completion to plaintiff and on January 4, 1979, six years and ten months after substantial completion and acceptance; Plaintiff could still bring suit under ten year statute of limitation); Anderson v. Fred Wagner and Roy Anderson, Jr., Inc., 402 So.2d 320, 321 (Miss. 1981) (More than ten years elapsed from date of construction and acceptance of building therefore claim barred); M.T. Reed Construction Co. v. Jackson Plating Co., 222 So.2d 838 (Miss. 1969) (cited in Deville, supra, parties entered into contract for construction of building in 1960; building completed and accepted in June, 1961; suit filed more than six years after acceptance of the building; therefore claim barred). See also, Collins v. Trinity Industries Inc., 671 F. Supp. 449, 449-50 (S.D. Miss. 1987), aff'd 861 F.2d 1364 (5th Cir.1988) (Contract for construction of generating unit entered into between power company and defendant; work performed and power company accepted the work performed on or before September 29, 1972; therefore, claim filed on June 14, 1985, was barred by statute of limitation).[8]
The only evidence presented in this case regarding acceptance of the work is that Tracewood purchased the complex four years after it was built for the first owner. All other affidavits offered by Nu-Way Steel demonstrate that the building was completed in 1975 or 1976, but there is no mention as to when Country Club accepted the work or occupied the building.[9]
It was imperative for Nu-Way Steel to demonstrate that this affirmative defense was his. Like other affirmative defenses, statutes of limitations proceed on the premise that the plaintiff can prove everything he has alleged. They represent a legislative judgment that, notwithstanding the presence of an otherwise viable and enforceable claim, the case ought not to proceed. Reich, supra, 526 So.2d 550, 551 (Miss. 1988).
Assuming, arguendo, Country Club accepted the work prior to February 11, 1977 then McMichael's suit filed against Nu-Way Steel on February 11, 1987 would be *1377 barred by the statute of limitation. But, because this is a summary judgment motion based on the statute of limitations, it was incumbent upon Nu-Way Steel to show that Country Club indeed accepted the work prior to February 11, 1977. It did not do so, and since the record is incomplete on this material fact, the motion should have been denied. Webster v. Mississippi Publishers Corp., No. 07-58372 slip op. at 7 (Miss.Sup.Ct., December 20, 1989). See also Smith v. Sanders, 485 So.2d 1051, 1054, 1055 (Miss. 1986). This is especially so where the trial court must view the evidence in light most favorable to the non-movant. Webster, supra, slip op. at 7 (citations omitted).
If the trial court on remand finds that Nu-Way Steel sufficiently has met its burden then it becomes McMichael's burden to rebut Nu-Way Steel's claim by producing supportive evidence of significant and probative value. Mere allegation or denial of the material fact is insufficient to generate a triable issue of fact and avoid an adverse rendering of summary judgment. Fruchter v. Lynch Oil Co., 522 So.2d 195, 198-99 (Miss. 1988).
This case underscores the importance for the trial court to review carefully all of the evidentiary materials before it. Because some doubt remained regarding the acceptance of the work or occupancy of the building, the trial court erred in granting the summary judgment for Nu-Way Steel. We must, therefore, reverse and remand this cause.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
NOTES
[1] McMichael sued a host of other people, but Nu-Way Steel is the sole appellee in this appeal because McMichael has settled his claims against all other defendants.
[2] The facts are taken from McMichael's complaint filed in this case.
[3] These apartments were formerly known as Country Club Terrace Apartments [hereinafter Country Club].
[4] The trial court entered an order on February 11, 1987, granting McMichael leave to file this amended complaint.
[5] § 15-1-41 was enacted on June 15, 1966, and later amended in 1972. This statute subsequently was modified in 1985 and 1986. See Fluor Corp. v. Cook, 551 So.2d 897, 899-90 (Miss. 1989). In its summary judgment motion, Nu-Way Steel erroneously maintained that § 15-1-41, as amended, applied. The 1986 amendment, however, makes clear that it shall only apply to causes of action accruing from and after January 1, 1986. Any cause of action accruing prior to January 1, 1986, shall be governed by the statute enacted in 1972. Consequently, this case is not controlled by the 1986 amendment; therefore, the statute of limitations for the case sub judice is ten years pursuant to the 1972 version of § 15-1-41.
[6] Nu-Way Steel filed this document, entitled Proof Submitted by Defendant in Support of Motion for Summary Judgment, on July 7, 1987.
[7] To repeat, § 15-1-41 states that an action shall not be maintained more than ten years after the written acceptance or actual occupancy or use, whichever occurs first... . During Oral argument, Nu-Way Steel asserted that the railing or bannister was an improvement made on the property. But, Nu-Way Steel was still unable to point to a date that Country Club accepted the improvement.
[8] In Collins, supra, the trial judge granted summary judgment in the case after reviewing a deposition filed which asserted that the Power Company, which was also the owner/operator and one of the contracting parties, accepted the improvement on or before September 29, 1972. 671 F. Supp. at 450 n. 2. In addition, a construction superintendent for the power company approved the final invoice on June 13, 1973, but more testimony indicated that the company had been using the ladder, which was included as part of the improvement and the subject of the litigation, for several months. Moreover, the ladders were used several months before the plant began operation. Id. at 453-54.
[9] Nu-Way Steel presented the argument that the tolling should begin when the contractor accepts the work, and they relied on Collins, supra, 671 F. Supp. 449. Any reliance on that case for that proposition, however, is misplaced. In Collins the power company was also the contractor and owner/operator. Thus, when the power company accepted the work as contractor, it also accepted it as owner.