526 So.2d 550 (1988)
James REICH and Mississippi Farm Bureau Insurance Company
v.
JESCO, INC. and AMCA International Corporation.
No. 57915.
Supreme Court of Mississippi.
June 3, 1988.
*551 George E. Dent, Soper, Russell, Richardson & Dent, Tupelo, Craig E. Brasfield, Collins & Brasfield, Jackson, for appellants.
L.F. Sams, Jr., Thomas D. Murry, Mitchell, McNutt, Bush, Lagrone & Sams, Thomas A. Wicker, Holland, Ray & Upchurch, William M. Beasley, Mitchell, Voge, Beasley & Corban, Tupelo, for appellees.
Before HAWKINS, P.J., and ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the Court:

I.
This is a case about a chicken house that collapsed under heavy ice and snow. The owner brought suit against the designer and contractor, only to have the court below hold his claim barred by the statute of limitations. We affirm.

II.
In 1973, Jesco, Inc., a construction company, built for James Reich a steel building to be used by Reich as a chicken house on his land in Itawamba County, Mississippi. Some twelve years later, between January 31 and February 2, 1985, a winter storm caused ice and snow to accumulate on the chicken house roof, which collapsed causing Reich considerable damage.
On May 10, 1985, Reich filed the present action in the Circuit Court of Itawamba County, Mississippi, against Jesco, Inc., and AMCA International, alleging that the steel building was defective in its design, manufacture, adequacy of materials, and adequacy of warnings in construction. Reich sued under theories of negligence, strict liability in tort and breach of express and implied warranties and sought substantial sums as damages.
On September 11, 1985, Mississippi Farm Bureau Insurance Company (MFBIC) moved to intervene, having become "obligated to pay unto plaintiff the sum of $19,672.00" for damages caused by the collapse of the insured chicken house. This motion was granted. See Rule 24, Miss.R. Civ.P.
On September 10, 1985, Jesco filed a motion for summary judgment. See Rule 56, Miss.R.Civ.P. Jesco argued that the applicable ten year statute of limitations, Section 15-1-41, had run and that the action was barred. AMCA filed a similar motion on September 23, 1985.
On August 26, 1986, the Circuit Court granted summary judgment to Jesco and AMCA and dismissed the complaint. Reich and MFBIC now appeal.

III.

A.
Statutes of limitations are like other affirmative defenses. They proceed on the premise that the plaintiff can prove everything he has alleged. They represent a legislative judgment that, notwithstanding the presence of an otherwise viable and enforceable claim, the case ought not to proceed. We accept this premise as we analyze Reich's claim.
Our course begins with the statute which at the time, in relevant part, read as follows:[1]

*552 Section 15-1-41. No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, ... against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than ten years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.
A quick reading of the statute, applied to the facts of this case, suggests strongly that the Circuit Court was quite correct. Reich began actual occupancy or use of the building in 1973. He filed his civil action in the Circuit Court of Itawamba County on May 10, 1985. That Reich did not know or have reason to know of the design and construction deficiencies in the chicken house is of no moment. The ten year limitations period applies in the case of deficiencies patent or latent and the clock starts ticking on date of occupancy. Smith v. Fluor Corp., 514 So.2d 1227, 1231 (Miss. 1987); Deville Furniture Co. v. Jesco, Inc., 423 So.2d 1337, 1341 (Miss. 1982).
Reich and MFBIC suggest this is an outrage, that their claim was barred before they had it. Reich says he had no reason to know anything was wrong with the chicken house until 1985, almost twelve years after he began using it. A bit of thought, however, suggests the statute not nearly so silly. The legislative judgment in effect affords owners such as Reich a ten year limited warranty grounded in the positive law. The statute incorporates a policy judgment that at the end of ten years following actual occupancy contractors such as Jesco are entitled to close their books on the chicken house project.

B.
Reich and his subrogated co-plaintiff, MFBIC, struggle mightily to evade our settled law. First, they note that statutes of limitations do not begin to run where there is fraudulent concealment, citing Miss. Code Ann. § 15-1-67 (1972) which reads:
Section 15-1-67. If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.
They then argue fraudulent concealment by Jesco and AMCA.
In Lundy v. Hazlett, 147 Miss. 808, 112 So. 591 (1927), the buyer of a tract of land brought suit against the seller for falsely representing the plot was fifty acres greater than its actual 316-acre size. The Court, in deciding the purchaser was not barred by the six year statute of limitations, found that the representations by the seller "not only lulled the purchaser into security, and prevented her from investigating as to the number of acres in the tract, but constituted an express, fraudulent representation which was calculated to conceal, and did conceal, the true facts from the purchaser ..." after completion of the sale. Lundy, 147 Miss. at 822, 112 So. at 592-93. In contrast, a similar claim was barred for having been filed seven years after the purchase of the land where the proof failed to show that the seller "did anything that could be construed as a concealment of the falsity of the representation as to the amount of land conveyed or a concealment of the cause of action." Dunn v. Dent, 169 Miss. 574, 577, 153 So. 798 (1934).
To establish fraudulent concealment in this state, there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim. See Federal Land Bank v. Collins, 156 Miss. 893, 127 So. 570 (Miss. 1930). Mere general allegations will not withstand a motion for summary judgment; "the party opposing the motion is required to bring forward significant probative evidence demonstrating the existence of the triable issue of fact." Brown *553 v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983). See also Bourn v. Tomlinson Interest, Inc., 456 So.2d 747, 749 (Miss. 1984); and Smith v. First Federal Savings & Loan Association of Grenada, 460 So.2d 786, 791-92 (Miss. 1984).
His rhetoric aside, Reich has failed to establish the existence of a genuine issue of material fact on the issue of fraudulent concealment. Jesco's Interrogatory No. 16 propounded to Reich asked that he state with particularity the basis for any allegation that Jesco or any other defendant fraudulently concealed any alleged deficiencies in the construction of the plaintiff's chicken house. The response was: "Parts of the metal supports were covered by 2 X 8 wooden boards. The top also concealed some of the faulty welds as well as insulation which covered other welding joints." As a matter of law, this does not constitute fraudulent concealment of a cause of action within the contemplation of Section 15-1-67.

C.
Reich next argues that Section 15-1-41 is limited to tort actions, his point being that the present action, at least insofar as it charges breach of warranty, sounds in contract. How this helps Reich is not apparent, as our statute of limitations on written contracts is six years. Presumably, Reich would have us identify a much later point in time when the limitations period began to run.
All of this is of no moment, for there is simply nothing in Section 15-1-41 which turns upon the conceptual barriers between contract and tort deemed so sacred in law school curricula and legal digests, but in few other places. In cases such as this where the content of the manufacturer or contractor's duty is so similar whether that duty be found in the public law or in privately-made law, Reich's argument appears quite vacuous. The statute places a time limitation upon claims arising out of deficiency in design, planning or construction of a building such as the chicken house. An imagination far more vivid than ours is necessary to detect within this language any distinction between deficiencies by reference to a contractual undertaking, including warranties, on the one hand, and deficiency measured by reference to the public tort law, on the other.

D.
Finally, we are told that Section 15-1-41 is unconstitutional because it exempts architects and contractors but excludes similarly situated persons such as owners and suppliers. This, MFBIC argues, contravenes the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.
To be sure, some state courts have accepted this argument. See, e.g., Turner Construction Co. v. Scales, 752 P.2d 467 (Alaska 1988) ("In our view there is no substantial relationship between exempting design professionals from liability, shifting liability for defective design and construction to owners and material suppliers, and the goal of encouraging construction.") Daugaard v. Baltic Cooperative Building Supply Associates, 349 N.W.2d 419 (S.D. 1984); Skinner v. Anderson, 38 Ill.2d 455, 231 N.E.2d 588 (1967); see also cases collected at 93 A.L.R.3d 1242, 1277. "Validity and Construction, as to Claims Alleging Design Defects, of Statute Imposing Time Limitations Upon Action Against Architect or Engineer For Injury or Death Arising Out of Defective or Unsafe Condition of Improvement to Real Property."
Notwithstanding these authorities, we confronted the constitutionality of the statute in Anderson v. Fred Wagner and Roy Anderson, Jr., Inc., 402 So.2d 320 (Miss. 1981) and denied the attack. We have reviewed the recent federal case law in search of contra signals, for the question presented is one of federal constitutional law. We find no clear and articulable expression on the point emanating from the United States Supreme Court. One Court of Appeals in Hartford Fire Insurance Co. v. Lawrence, Dykes, Goodenberger, 740 F.2d 1362 (6th Cir.1984) has said:
[T]he U.S. Supreme Court has offered some indication that it does not perceive any violation of the U.S. Constitution under *554 these ["no action"] statutes. Appeals from a state court decision that such statutes were constitutional have twice been dismissed by the Supreme Court on the ground that no substantial federal question was presented ... The Supreme Court has emphasized that by dismissing for lack of a substantial federal question, it is deciding a case on the merits ... Accordingly, three state courts have noted these dismissals as some authority that these statutes do not present federal constitutional problems.
740 F.2d at 1366 (citations omitted). But see McClanahan v. American Gilsonite Co., 494 F. Supp. 1334 (D.C.Colo. 1980).
In the absence of persuasive federal authority suggesting fault with our 1981 Anderson decision, we adhere to it and reject MFBIC's constitutional claim.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Amended effected January 1, 1986, to provide only a six year period within which to bring an action such as this. See Miss. Laws, ch. 505, § 5 (1985).