992 So.2d 1194 (2008)
Barry POPE, Individually and as a Shareholder of Worldwide Forest Products, Inc., et al., Appellants,
v.
Brian SORRENTINO, Dale Hill, Worldwide Forest Products, Inc., Kemper Pressure Treated Forest Products, Inc., Life2k.Com, Inc., Algonquin Acquisition Corporation, Generation Acquisition Corporation, Syndicationnet.Com, Inc. and Castle Securities Corporation, Appellees.
No. 2005-CA-02338-COA.
Court of Appeals of Mississippi.
April 15, 2008.
Certiorari Denied October 23, 2008.
*1195 Clarence McDonald Leland, Jackson, attorney for appellants.
Sam Starnes Thomas, H.D. Granberry, attorneys for appellees.
Before MYERS, P.J., CHANDLER, GRIFFIS and CARLTON, JJ.
*1196 CHANDLER, J., for the Court.
¶ 1. The Circuit Court of Madison County granted summary judgment against Barry Pope, finding that the claims he asserted against the Appellees were barred by the applicable statute of limitations. Aggrieved, Pope appeals. He argues that summary judgment was not proper because the statute of limitations did not bar his claims and because there were issues of material fact. He also argues the circuit court should not have awarded attorney's fees to the Appellees.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Pope, individually and as a shareholder of Worldwide Forest Products, Inc., filed a complaint on November 26, 2001, in the Circuit Court of Madison County. The complaint named the following as defendants: Brian Sorrentino; Dale Hill; Worldwide Forest Products, Inc.; Kemper Pressure Treated Forest Products, Inc.; Life2K.com, Inc.; Algonquin Acquisition Corporation; Generation Acquisition Corporation; Syndication Net.com, Inc.; and Castle Securities Corporation.
¶ 4. On January 6, 2003, Pope also filed an amended complaint. The complaint alleged negligent supervision, securities fraud, fraud, negligent misrepresentation, negligence and breach of fiduciary duties, tortious breach of contract, willful and knowing inducement to breach contracts and tortious interference with contractual rights, inducement and breach of oral contract, bad faith breach of contract, constructive trust, intentional and negligent infliction of emotional distress, and civil conspiracy.
¶ 5. Pope's current claim stems from his settlement of a prior lawsuit against Worldwide and its former president, David Wise. In that lawsuit, Pope alleged that he and Worldwide reached an agreement in 1991, providing that Pope would promote Worldwide in order to raise its stock price so it would be eligible to be traded on the NASDAQ stock exchange. In exchange, Pope was to receive shares and stock warrants in Worldwide. Pope claimed that Worldwide again contracted for his services the following year.
¶ 6. According to Pope, he learned in 1994 that Wise and Sorrentino, who raised money for Worldwide and later became an officer of the corporation, were liars and that they planned to defraud Pope out of his contracts with Worldwide. Upon learning that Worldwide was not going to honor his contracts, Pope filed a civil lawsuit against the company. In 1996, the parties negotiated a settlement, which the court memorialized in a consent order and an amended consent order. The amended consent order provided that Worldwide would issue Pope 30,000 shares of stock and 150,000 one dollar stock warrants.[1]
¶ 7. It is this consent order that Pope claimed was induced by fraud. According to Pope, he only agreed to the settlement because he was shown a "firm commitment letter" from Castle stating that it would underwrite Worldwide's stock offering. According to Pope, the letter guaranteed that Castle would buy Worldwide shares for five dollars per share in the event the stock did not reach the projected offering price. Pope alleged that Sorrentino told him that Worldwide would go public in January 1997, but the parties included no such agreement in the consent order or the amended consent order.
*1197 ¶ 8. Later in 1996, following entry of the consent order, Worldwide was involved in two more lawsuits. One lawsuit was an involuntary bankruptcy lawsuit against Worldwide, and the other was a lawsuit by Worldwide against its former president, Wise, alleging that he took money from the corporation. Pope claimed that, prior to and throughout these trials, Sorrentino continued to assure him that Worldwide would comply with the consent order and the public offering would go through as soon as the lawsuits were resolved.
¶ 9. In November 1996, the National Association of Securities Dealers (NASD) sent a letter to Worldwide informing the company that its public offering was put on hold pending approval of its registration statement. Four days later, Pope mailed a letter to Castle in which he offered to sell his Worldwide shares to Castle for a price less than what he believed Castle committed to pay in the underwriting agreement.
¶ 10. Nevertheless, Pope claimed he relied on Sorrentino's assertions throughout the trials, and he believed Sorrentino and Worldwide would honor the amended consent order once the lawsuits concluded. Worldwide's lawsuit against Wise concluded in January 1999, but Pope said he did not find out about the verdict until the next month.
¶ 11. When Pope learned that Worldwide's lawsuit had concluded, he said he inquired into when the company would go public. He claimed that he learned Sorrentino never intended to take Worldwide public and that Sorrentino had lied to him. Instead of working on the Worldwide public offering, Pope alleged Sorrentino had been secretly converting Worldwide investors' shares into shares of Kemper. Pope said he began to hear about such stock conversions in the middle of 1998.
¶ 12. Pope said he also found out that Worldwide was saddled with massive Environmental Protection Agency (EPA) liability from prior contamination of the factory site, which prevented it from going public. He claimed that Sorrentino knew about the liability all along and, therefore, knew that Worldwide could never go public. Pope claimed he learned about all of Sorrentino's wrongdoings in April 1999, and he filed the present lawsuit on November 26, 2001.
¶ 13. The circuit court granted two motions for summary judgment, one made by Castle and the other by the remaining Appellees except Worldwide (Sorrentino Appellees). Later, the circuit court issued an amendment to clarify the original judgment. In the amended judgment, the circuit court charged Pope with knowledge of his claim against Castle prior to November 1998. It found that, according to the letter Pope wrote to Castle in 1996, Pope was familiar with the terms of the Castle-Worldwide contract and with the fact that certain contingencies had to be fulfilled for the contract to come to fruition. Similarly, the circuit court found that Pope had knowledge of the breaches of Pope's contract and agreed judgment by Worldwide and Sorrentino.
¶ 14. The court concluded that Pope's claims accrued more than three years prior to November 26, 2001, the date on which he filed his initial complaint. Accordingly, the court dismissed Pope's claims with prejudice. Following entry of the final judgment, the court granted Pope an extension of time to appeal, during which he timely filed this appeal.

STANDARD OF REVIEW
¶ 15. This Court will review a grant or denial of a motion for summary judgment under a de novo standard. Partin v. N. Miss. Med. Ctr., Inc., 929 So.2d 924, *1198 928(¶ 13) (Miss.Ct.App.2005) (quoting Williamson ex rel. Williamson v. Keith, 786 So.2d 390, 393(¶ 10) (Miss.2001)). We will view the evidence in the light most favorable to the nonmoving party. Id. When viewed as such, if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Id.

ANALYSIS OF ISSUES

I. Summary Judgment
¶ 16. Pope argues that the circuit court erred in granting summary judgment in favor of Castle and the Sorrentino Appellees. According to Pope, his claims presented genuine issues of material fact and were not time-barred; therefore, the circuit court should not have dismissed them.
¶ 17. The circuit court granted two motions for summary judgment, the first in favor of Castle and the second in favor of the Sorrentino Appellees. We will address both motions. In its initial order granting summary judgment, the circuit court found that there existed no genuine issues of material fact with regard to Pope's claim against Castle and that the statute of limitations had expired with regard to Pope's claim against the remaining defendants except Worldwide. The circuit court later entered an amended judgment. In the amended judgment, the circuit court further found that granting both motions was appropriate because Pope had not properly filed his claims before the expiration of the statute of limitations.

A. Sorrentino and Other Appellees Except Castle and Worldwide
¶ 18. Pope filed suit on November 26, 2001; therefore, the relevant date for statute of limitations purposes is three years prior to that date, on November 26, 1998. Miss.Code Ann. § 15-1-49 (Rev.2003). Pope's claims, including fraudulent and negligent misrepresentation and/or omission, are covered under section 15-1-49. Rankin v. Am. Gen. Fin., Inc., 912 So.2d 725, 726(¶ 2) (Miss.2005). If Pope knew about his claims or with reasonable diligence could have discovered his claims prior to that date, then those claims are barred by the statute of limitations. Miss. Code Ann. § 15-1-49. If, however, Pope can show that (1) the Sorrentino Appellees committed some affirmative act of concealment and (2) he did not know about the fraud and could not have discovered it with reasonable diligence, then the statute of limitations is tolled because of the Sorrentino Appellees' fraudulent concealment. Miss.Code Ann. § 15-1-67 (Rev.2003).
¶ 19. In regard to an allegation of fraudulent concealment, "there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim." Sanderson Farms, Inc. (Prod. Div.) v. Ballard, 917 So.2d 783, 790(¶ 33) (Miss. 2005) (quoting Reich v. Jesco, Inc., 526 So.2d 550, 552 (Miss.1988)). Mere allegations that the opposing party has complete control over the information are not sufficient. Id. at 790(¶ 34). "[T]here must be some subsequent affirmative act by the defendant which was intended to prevent and which did prevent discovery of the claim." Andrus v. Ellis, 887 So.2d 175, 181(¶ 30) (Miss.2004) (citing Stephens v. Equitable Life Assur. Soc'y of the U.S., 850 So.2d 78, 83-84(¶ 18) (Miss.2003)).
¶ 20. In addition to proving an affirmative act of concealment, the party alleging fraudulent concealment must prove that despite his due diligence, he was unable to discover the claim before the expiration of the statute of limitations. Parker v. Horace Mann Life Ins. Co., 949 So.2d 57, 59(¶ 8) (Miss.Ct.App.2006) (citing Reich, 526 So.2d at 552). Only then will *1199 the statue of limitations be tolled for the cause of action. Id. "[T]he test on whether to toll the statute of limitations is whether a reasonable person similarly situated would have discovered potential claims." Andrus, 887 So.2d at 180(¶ 27) (citing Am. Bankers' Ins. Co. v. Wells, 819 So.2d 1196, 1201(¶ 12) (Miss.2001)).
¶ 21. In order for Pope's allegation of fraudulent concealment to toll the statute of limitations, he first needed to show that the Sorrentino Appellees engaged in some affirmative act to conceal the following: (1) that Worldwide was saddled with massive EPA liability, which would prevent it from going public and (2) that they knew all along that Worldwide would never go public. Additionally, Pope needed to show that he did not know, or could not have discovered with reasonable diligence, that the Sorrentino Appellees knew about the EPA liability or that they never intended to go forward with the Worldwide public offering.
¶ 22. Pope claims he alleged sufficient facts to withstand summary judgment based on the running of the statute of limitations. He alleged that Sorrentino knew about Worldwide's EPA liability since at least 1994, as evidenced by Sorrentino's testimony from a 1994 deposition. He then claimed that Sorrentino had a duty to disclose said information, but instead, he actively concealed it from Pope until 1999. During that time, Pope claimed that Sorrentino was secretly converting shares of Worldwide into shares of Kemper.
¶ 23. According to Pope, even though Sorrentino knew Worldwide would never go public, he convinced Pope to settle his prior claims against Worldwide for shares in the company. Thereafter, Sorrentino repeatedly promised Pope that Worldwide's public offering would take place at the conclusion of Worldwide's pending lawsuits. Pope claimed these reassurances took place from the end of 1996 until April 1999, when Pope said he learned that Sorrentino never intended to go public with Worldwide. The effect of Sorrentino's fraud was to render Pope's Worldwide shares, which he received in the settlement, worthless. Instead of taking Worldwide public, Pope claimed that Sorrentino had always planned to convert Worldwide shareholders into shareholders in Kemper and then to eventually go public with Kemper. Pope also said he learned about Worldwide's EPA liability in April 1999.
¶ 24. However, as we have said, mere allegations are not sufficient. Sanderson Farms, 917 So.2d at 790(¶ 34). Despite his mostly unfounded allegations, it is evident that Pope either knew of or should have discovered his claims against Sorrentino and the other Appellees prior to November 26, 1998.
¶ 25. In their motion for summary judgment, the Sorrentino Appellees argued that Pope knew of or should have discovered his claims prior to November 26, 1998. The circuit court agreed and found that prior to that date Pope became aware that there would be a noncompliance with the agreed judgment. The circuit court also found that as early as 1994, Pope said that he thought Sorrentino was a liar and a cheat. At that time, Pope said Sorrentino did not intend to honor Pope's contracts with Worldwide, and Sorrentino told Pope that he would get nothing.
¶ 26. Further proof that Pope knew the Worldwide stock offering would not go forward was the letter he sent to Castle following the NASD notice putting the offering on hold. In the letter, Pope offered to sell his shares of Worldwide to Castle for less than what he believed he would receive under the terms of the "firm commitment letter." The NASD notice came *1200 at the end of 1996, around the time Pope claimed that Sorrentino began telling him that Worldwide would go public following the pending lawsuits.
¶ 27. If we are to believe Pope's testimony, he began to distrust Sorrentino as far back as 1994. Nevertheless, even though Sorrentino told Pope he was going to defraud him out of his contracts, Pope claimed to have relied on Sorrentino's assurances by agreeing to settle his claims against Worldwide. Thereafter, Pope claimed that he continued to rely on Sorrentino's assurances for more than two years after the initial date on which Sorrentino told him Worldwide would go public. Taking all the facts into account, we cannot say the circuit court was in error in charging Pope with knowledge of his claims prior to November 26, 1998.
¶ 28. We are similarly unpersuaded that Pope remained unaware of the environmental problems connected to Worldwide until April 1999. He admitted that, as early as 1993, he was suspicious of Worldwide and its connection to Winston Holdings. Pope said he found out about the contaminated land adjacent to the Worldwide site, which was technically owned by a company called Winston Holdings. However, sources told him that Winston Holdings was, in fact, a part of Worldwide, and Worldwide paid the property taxes on the contaminated land. Pope even claimed that at the time, Sorrentino told him to keep quiet about it and to stop making trouble.
¶ 29. Pope's claim that Sorrentino converted Worldwide shares into shares of Kemper also does not support his contention that he was unaware of his potential claims until 1999. Pope specifically said he began learning about such conversions sometime in the middle of 1998. Nevertheless, even if the statute of limitations began to run sometime in the middle of 1998, Sorrentino's November 26, 2001, filing remains untimely.
¶ 30. Ultimately, we find that a reasonable person in Pope's situation should have discovered his claims against the Sorrentino Appellees prior to November 26, 1998. Taking the evidence in a light most favorable to Pope, it remains that he believed Sorrentino was a liar and planned to defraud him. Sorrentino told Pope in 1996 that the Worldwide offering would be delayed. We cannot say a reasonable person would have relied on the assurances of someone that he believed to be a liar and a crook for more than two years in expectation that the liar would eventually make good on his promises. Furthermore, Pope cannot say he remained unaware of the EPA liability connected to Worldwide until 1999 when he admitted he became suspicious about it as far back as 1993.
¶ 31. After reviewing the evidence under a de novo standard, we do not find that the circuit court erred in granting summary judgment in favor of the Sorrentino Appellees. This issue is without merit.

B. Castle
¶ 32. Pope's argument against summary judgment in favor of Castle is similarly without merit. Pope's claim against Castle stems from Worldwide's EPA liability and the document Pope refers to as a "firm commitment letter." Pope alleged that the "firm commitment letter" guaranteed that Castle would purchase Worldwide stock at a designated price at public offering if the stock price did not rise to a certain level. Pope claimed he was shown this letter during settlement negotiations regarding his first lawsuit. As a result, Pope said he settled his first lawsuit, relying on the "firm commitment letter" as a guarantee that he would receive the value of the shares he accepted in settlement.
*1201 ¶ 33. Pope argues that Castle did not exercise due diligence by investigating the Worldwide site for possible EPA liability prior to underwriting the stock deal. He claims that he learned of the lack diligence in April 1999, when Mike Studor, managing underwriter for Castle, told him that Castle did not properly investigate the Worldwide deal. Pope further claims that Castle could have easily discovered the EPA liability connected with the site if it had exercised due diligence. Pope argues that, if Castle had conducted proper investigations, it would not have agreed to underwrite the deal, and Pope would not have detrimentally relied on the "firm commitment letter" when he agreed to settle his first lawsuit against Worldwide.
¶ 34. The circuit court referenced the letter from Castle to Worldwide in its order granting summary judgment. It noted that, per the agreement, Castle's underwriting of Worldwide's stock offering was contingent upon a number of conditions. After reviewing the letter, we agree with the circuit court that the "firm commitment letter" was not a guarantee that Castle would underwrite Worldwide's public offering upon which Pope could have relied.
¶ 35. The letter makes clear that there were a number of conditions that needed to be met before Castle would underwrite the Worldwide stock offering. Importantly, one condition was the approval of Worldwide's registration statement by the Securities and Exchange Commission. It also contained provisions specifying that the letter created no obligation between the parties and that it was not a binding agreement to consummate the public offering. The letter specifically stated that Castle did not have the funds to cover the public offering and might not be able to raise sufficient funds to act as an underwriter. In such event, Castle could have elected not to proceed with the underwriting.
¶ 36. Pope says Sorrentino showed this letter to him, and it convinced him to agree to the settlement memorialized in the consent order and amended consent order. As shown, the agreement represented in the letter is not a finalized agreement by Castle to underwrite Worldwide's stock offering. There remained a number of contingencies that had to be fulfilled before Castle would underwrite the Worldwide stock offering.
¶ 37. The party who requests summary judgment must prove that there is no genuine issue of material fact, and the nonmoving party receives the benefit of the doubt as to whether such an issue of material fact exists. Williamson v. Keith, 786 So.2d 390, 395(¶ 19) (Miss.2001) (quoting Ellis v. Powe, 645 So.2d 947, 952 (Miss. 1994)). In opposition to the motion, the nonmoving party must show there is significant probative evidence that such an issue of fact exists. Id. Mere allegations unsupported by detailed and precise facts are not sufficient. Id.
¶ 38. With regard to Pope's claim against Castle, we agree that no genuine issue of material fact exists. Pope cites to the "firm commitment letter" as the basis for his claim. Upon reading the letter, we, however, do not agree that it supports Pope's contentions. We do not find it to be an agreement that could have reasonably led Pope to believe that Castle was bound to underwrite Worldwide's public offering.
¶ 39. As we have previously discussed, Pope's claims are also barred by the three-year statute of limitations of Mississippi Code Annotated section 15-1-49. Because Pope began investigating the EPA conditions at the Worldwide site in 1993, he either had knowledge of or reasonably should have had knowledge of the liability *1202 that he claims Castle should have discovered. Furthermore, Pope tried to sell his shares to Castle at a reduced rate at the end of 1996 when it was clear the Worldwide deal would not take place.
¶ 40. Pope's attempt to place liability on Castle because of this "firm commitment letter" is misplaced. As the circuit court found, and as reflected by his experience, Pope was a person of knowledge in the securities industry. It is clear from a cursory reading of the letter that it contains a number of contingencies that would prevent Castle from actually underwriting the Worldwide stock deal. In addition, just as with Pope's claims against the Sorrentino Appellees, Pope's claims against Castle are barred by the statute of limitations.
¶ 41. We find the circuit court properly granted Castle's motion for summary judgment. This issue is without merit.

II. Attorney's Fees
¶ 42. We review the circuit court's decision to grant attorney's fees under an abuse of discretion standard. Miss. Power & Light Co. v. Cook, 832 So.2d 474, 478(¶ 7) (Miss.2002). Determining reasonable attorney's fees is generally within the court's discretion. Id. (quoting Gilchrist Tractor Co. v. Stribling, 192 So.2d 409, 418 (Miss.1966)).
¶ 43. Pope argues that the circuit court erred in the January 10, 2005, order granting summary judgment because it found that the Sorrentino Appellees and Castle were entitled to attorney's fees as a result of Pope's continuance of the September 22, 2004, trial date.
¶ 44. The record, however, contains no further mention of attorney's fees by the court. The attorney for the Sorrentino Appellees submitted an affidavit detailing his expenses, but the record contains no subsequent order awarding attorney's fees. The amendment to the original order, filed five months later, also made no mention of attorney's fees.
¶ 45. Because there is no record of the circuit court ordering an award of attorney's fees, we have nothing to review. Accordingly, this issue is moot.
¶ 46. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Pope's warrants, if exercised, required him to pay one dollar each to execute them and turn them into common stock. In this case, Pope could have paid $150,000 and received 150,000 shares of Worldwide stock.