# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2025-CA-00166-SCT

*TRISTAN SMITH*

*v.*

*MISSISSIPPI FARM BUREAU CASUALTY
INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/14/2025 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| TRIAL COURT ATTORNEYS: | ORVIS A. SHIYOU, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DANIEL MYERS WAIDE |
| ATTORNEYS FOR APPELLEE: | SAM STARNES THOMAS |
| | OWEN PATRICK TERRY |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 06/11/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., ISHEE AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Following a car accident, Caitlin Overstreet had a miscarriage. She subsequently filed a wrongful-death lawsuit against Mississippi Farm Bureau Casualty Insurance Company. After the case had been litigated for several years and a settlement was reached, Tristan Smith, the father of the unborn child, filed a motion to intervene. The trial court denied the motion as untimely, and Smith appealed. We find no error in the denial of the motion to intervene. The judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2.     In November 2018, Caitlin Overstreet, who was pregnant at the time, was in an

automobile accident. Days later, Overstreet miscarried the child. Overstreet testified that she was "[t]wo to three months" pregnant at the time of the accident and that she had not yet felt the child move. Overstreet further stated that she and Tristan Smith, the child's father, were still in a relationship at the time and had been together for about four years.[1]

¶3. Overstreet made a claim under her auto-insurance policy with Farm Bureau for uninsured- and underinsured-motorist (UM) benefits. Farm Bureau denied the claim. Then, in December 2021, Overstreet filed a wrongful-death lawsuit against Farm Bureau. The complaint alleged that she was "run off the road by another automobile being negligently operated by an unknown driver." Farm Bureau answered and denied that Overstreet or her unborn child had a claim. Farm Bureau instead asserted that "if there were another automobile or 18-wheeler that had any involvement in the accident that occurred . . . , Farm Bureau would show there was no actual physical contact between that other automobile and/or 18-wheeler and the vehicle operated by" Overstreet.

¶4. In February 2024, Overstreet reached a settlement with Farm Bureau. On August 5, 2024, Overstreet and Smith were adjudicated as the sole heirs at law and wrongful-death beneficiaries of the unborn child.[2] The next day, on August 6, Smith filed a motion to intervene in the wrongful-death action. Smith alleged that he was unaware of the proceedings until he was served with a summons to determine the heirs at law and wrongful-death beneficiaries of the child. He further opined that at the hearing to determine the heirs

_____

[1] Overstreet was deposed in May 2019.

[2] This occurred in Cause No. 34CH1: 24-cv-00087 in the Chancery Court of the First Judicial District of Jones County.

2

at law and wrongful-death beneficiaries, he learned that Overstreet was "more likely than not" the tortfeasor after it was discovered that she was driving ninety-two miles per hour at the time of the wreck.

¶5. In the motion to intervene, Smith asserted: (1) the child was "entitled to UM benefits under the policy [as] a result of [Overstreet's] negligence"; (2) Overstreet "should be disqualified from bringing any claims on behalf of the heirs and beneficiaries of" the child; and that (3) "there may be an issue of bad faith to be further investigated wherein Farm Bureau knew that [the child] was entitled to UM benefits as a result of the negligence of [Overstreet], yet . . . chose to keep said knowledge to itself in an attempt to pay less money on the claim."

¶6. Overstreet and Farm Bureau opposed Smith's motion to intervene. Farm Bureau asserted that the motion was untimely and that "no one and nothing prevented Smith, or his representatives, from investigating and discovering any and all facts related to the subject accident."

¶7. In his reply, Smith alleged that when Farm Bureau made an offer to resolve the case in August 2024, he then "learned for the first time that Farm Bureau did not stack the insurance policies in question because there was apparently no contact made by any alleged third party and Caitlin Overstreet was apparently going over 90 mph just before the crash." Smith claimed that these facts were concealed from him, thus tolling the statute of limitations. Smith asserted that the child had "a claim for the stacked [policy] limits . . . whether the claim involves an unknown third party or [Overstreet]." Smith additionally

3

alleged that the claims relate back and there was a potential for bad faith on the part of Farm Bureau. Smith claimed that he "should be allowed to intervene and seek full benefits on behalf of" his unborn child.

¶8. After a hearing, the court requested that the parties submit supplemental briefs as to the timeliness of the motion. In addition, Farm Bureau asserted that the motion was untimely to intervene as of right. Farm Bureau also argued that Smith's claim was barred by the statute of limitations. Farm Bureau reasoned that Smith filed the motion six years after the accident, and "no one and nothing prevented Smith, or his representatives, from investigating and discovering any and all facts related to the accident and the death of Baby and/or seeking to join in this action." Farm Bureau asserted that "the length of time during which Smith actually knew or reasonably should have known of his interest in this action is sufficient, standing alone, to find the Motion untimely." Farm Bureau noted that "Overstreet and Smith have another child together, born more than one year after the accident" and that "Smith has maintained some form of relationship with and communication with . . . Overstreet since the occurrence of the accident." Farm Bureau claimed that both Overstreet and Farm Bureau "would be actually prejudiced with more discovery, preparation, and expense if Smith were permitted to intervene[.]" Farm Bureau alleged that Smith, on the other hand, would suffer "no real prejudice" because as a wrongful-death beneficiary, he would "recover his share under the settlement" Overstreet "already reached with Farm Bureau." Lastly, Farm Bureau argued that Overstreet, after initiating the lawsuit, "became a 'fiduciary' to Smith" and was "empowered" to "enter into fair settlement negotiations" for both of their benefit. (emphasis

4

omitted) (quoting ***Long v. McKinney***, 897 So. 2d 160, 169 (Miss. 2005)).

¶9.     In response, Smith argued that "because of [Overstreet's] negligence, she cannot serve as fiduciary" and she therefore "lacks capacity to enter into [a] settlement[.]"  Smith also asserted that "as a matter of public policy, Farm Bureau should not be allowed to settle" "with a Defendant[.]"

¶10.    The trial court's ruling on the motion to intervene considered the four timeliness factors outlined in ***Partnership for Healthy Mississippi v. State ex rel. Barbour (In re Hood ex rel. State Tobacco Litigation)***, 958 So. 2d 790, 806 (Miss. 2007).  The court found that as the father, "Smith was well or should have been well aware of his potential interest" and that Smith failed to show that he was prevented from investigating the wreck, questioning Overstreet, or filing suit.  The court also found that if Smith's motion to intervene was granted, "the prejudice suffered by . . . Overstreet and Farm Bureau would be great."  The court opined that "Smith may suffer some prejudice if he [was] not allowed to intervene" but noted that Smith may not recover any benefits if he was "allowed to intervene and dismantle the settlement agreement" between Overstreet and Farm Bureau.  Lastly, the court found "several unusual circumstances that weigh[ed] against the timeliness of Smith's motion."  The court pointed out that Smith had maintained a relationship with Overstreet and had only sought to intervene after the case "ha[d] been litigated for over two (2) years and a settlement reached[.]"

¶11.    The trial court ultimately determined that Smith's motion to intervene was untimely and denied it as such.  The trial court dismissed with prejudice the claims of Overstreet and

5

the child against Farm Bureau. From this judgment, Smith appealed.

¶12.    On appeal, Smith argues that (1) Overstreet lacked capacity and standing to enter into a settlement on behalf of the other beneficiaries; (2) public policy does not allow a tortfeasor to unilaterally settle a plaintiff's claim; (3) he was not making or bringing new claims against Farm Bureau; (4) concealment tolls the statute of limitations; (5) the claims brought by him would relate back; and (6) he has the right to intervene. In contrast, Farm Bureau argues that Smith's attempt to intervene was untimely and that the claims do not relate back to the filing of the underlying action.

## STANDARD OF REVIEW

¶13.    Judgments regarding intervention as a matter of right are reviewed de novo. *Madison HMA, Inc. v. St. Dominic-Jackson Mem'l Hosp.*, 35 So. 3d 1209, 1214 (Miss. 2010). "The determination of whether an application to intervene is timely is committed to the discretion of the trial court and will not be overturned on appeal absent an abuse of discretion." M.R.C.P. 24 advisory comm. n.

## DISCUSSION

### I.    Smith's motion to intervene was untimely under the *In re Hood* factors.

¶14.    In *Long*, this Court discussed conflicts of interest between wrongful-death beneficiaries. *Long*, 897 So. 2d at 169-71. The Court "eliminate[d] the inherent conflict of interest and simplif[ied] the decisions to be made by trial courts where more than one heir wishes to participate in the litigation to protect their individual interests." *Id.* at 171. We held "that the first court to properly take jurisdiction of a wrongful death action in our state

6

courts shall, so long as that action is pending, have exclusive jurisdiction, and any other subsequently[]filed action for the same death shall be of no effect." *Id.* at 173. Additionally, all wrongful-death claims "shall be joined in one suit." *Id.* at 174. As a result, "[e]ach claimant, as a matter of right, may join in the litigation and participate as fully as any other claimant." *Id.* at 174. Lastly,

> [w]here . . . one of the wrongful death beneficiaries proposes to engage counsel and file a wrongful death suit without participation of the personal representative of the decedent and all other beneficiaries, the beneficiary who files suit does so as the representative of all statutory beneficiaries and must . . . provide reasonable notice (i) to all other wrongful death beneficiaries; (ii) to the personal representative of the decedent if one has been appointed; and (iii) to each person who bears a relationship to the deceased specified in [Mississippi Code] section 11-7-13.

*Id.* at 176 (footnotes omitted).

¶15. Rule 24(a) of the Mississippi Rules of Civil Procedure states that,

> [u]pon *timely* application, anyone shall be permitted to intervene in an action:
>
>> (1) when a statute confers an unconditional right to intervene; or
>>
>> (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

M.R.C.P. 24(a) (emphasis added). While we agree with Smith that he had a right to participate in the litigation concerning the death of his unborn child, the Court must first address the timeliness of Smith's motion to intervene. To this point, Smith simply asserts that he "moved for intervention as soon as he learned that [Overstreet] was the most likely tortfeasor."

¶16. A motion to intervene "must be timely[,]" but "timeliness has no fixed meaning[.]" *City of Tupelo v. Martin*, 747 So. 2d 822, 826 (Miss. 1999). Instead, this Court has outlined "four factors which must be considered when determining whether a motion to intervene was timely filed." *In re Hood*, 958 So. 2d at 806. These factors include:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene;
>
> (2) The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;
>
> (3) The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; and,
>
> (4) The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Id.* (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)).

¶17. "Thus, 'timeliness is not limited to chronological considerations, but "is to be determined from all the circumstances."'" *Id.* (quoting *Stallworth*, 558 F.2d at 263). "While none of the factors is outcome-determinative, satisfying one in some instances may be enough." *Id.*

¶18. The trial court considered the factors and found that (1) "Smith was well or should have been well aware of his potential interest" as the father of the unborn child; (2) the prejudice suffered by Overstreet and Farm Bureau would be "great" were Smith allowed to intervene; (3) "Smith may suffer some prejudice [were] he . . . not allowed to intervene[,]" but that he may recover *no* benefits if he intervened and "dismantle[d] the settlement

8

agreement" between Overstreet and Farm Bureau; and (4) "unusual circumstances . . . weigh[ed] against the timeliness of Smith's motion" - namely that Smith had maintained a relationship with Overstreet and had only sought to intervene after the case "ha[d] been litigated for over two (2) years and a settlement reached[.]"

¶19.    We find that the trial court did not abuse its discretion by denying Smith's motion to intervene as untimely.  As the court noted, Smith, the father of the unborn child, knew of the death for almost six years before filing the motion to intervene.  Evidence was presented that Smith and Overstreet maintained their relationship for several years after the accident.  Yet Smith first alleged that Overstreet was at fault and began to question the circumstances surrounding the accident almost three years after Overstreet filed suit against Farm Bureau and six months after the case was settled.

¶20.    Smith asserts that certain facts, specifically that Overstreet was going more than ninety miles per hour at the time of the accident and that "there was apparently no contact made by any alleged third party[,]" were concealed from him.  "In order to establish fraudulent concealment, 'there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim.'"  ***Robinson v. Cobb***, 763 So. 2d 883, 887 (Miss. 2000) (quoting ***Reich v. Jesco, Inc.***, 526 So. 2d 550, 552 (Miss. 1988)).    Smith "must first prove that [Overstreet] 'engaged in affirmative acts of concealment.'"  ***Id.*** (quoting ***In re Catfish Antitrust Litig.***, 826 F. Supp. 1019, 1030 (N.D. Miss. 1993)).  Smith "must also prove that even though [he] acted with due diligence in attempting to discover [Overstreet's] role in the accident, [he] was unable to do so."  ***Id.***

9

(citing **Wilson v. Retail Credit Co.**, 325 F. Supp. 460, 465 (S.D. Miss. 1971), *aff'd on other grounds*, 457 F.2d 1406 (5th Cir. 1972)). Other than his own assertions, Smith has not shown any affirmative acts of concealment nor how he was diligent in trying to ascertain Overstreet's fault.

¶21.   As to the second factor, were Smith allowed to intervene, the prejudice to Overstreet and Farm Bureau would be significant.  Farm Bureau asserts that "if Smith were permitted to intervene, Overstreet and Farm Bureau would be actually and significantly prejudiced by more discovery, preparation, and expense in defending Smith's proposed claim or claims[.]" We agree.  As noted above, Smith filed his motion to intervene after the parties had already litigated the case for several years and had settled the claims.  Smith additionally alleges that Overstreet should be a codefendant along with Farm Bureau, a new claim.  The trial court was correct that the parties would be greatly prejudiced were Smith's motion to intervene permitted.

¶22.   On the other hand, it is not guaranteed that Smith would be prejudiced were he not allowed to intervene.  As the trial court pointed out, there is a possibility that if Smith "dismantle[s] the settlement agreement[,]" he may not recover any benefits whatsoever.  As the settlement stands now, he would share in the settlement proceeds as a wrongful-death beneficiary of the child.

¶23.   Lastly, as to any unusual circumstances, the trial court and Farm Bureau point to the fact that the case had already been settled at the time of Smith's motion to intervene.  Again, Smith did not file his motion to intervene until six years after the accident, three years after

litigation began, and six months after a settlement was reached. Additionally, he is entitled to recover a portion of the settlement proceeds as a wrongful-death beneficiary. These facts weigh against allowing Smith to intervene in the action.

¶24. This Court agrees with the trial court that Smith's motion to intervene was untimely in light of the factors outlined in *In re Hood*.

¶25. Based on the findings as to the timeliness of Smith's motion to intervene, we conclude there is no reason to address the other issues raised.

## CONCLUSION

¶26. Smith's motion to intervene in the wrongful-death litigation was untimely under the factors laid out in *In re Hood*. The trial court did not abuse its discretion by denying the motion to intervene, and, therefore, the judgment is affirmed.

¶27. **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., ISHEE, SULLIVAN AND BRANNING, JJ., CONCUR.**