450 So.2d 420 (1984)
WEST END CORPORATION, a Mississippi Corporation and Universal Investment Corporation, a Mississippi Corporation
v.
Robert R. ROYALS, et ux.
No. 54066.
Supreme Court of Mississippi.
April 25, 1984.
Rehearing Denied May 30, 1984.
*422 S. Wayne Easterling, Carey R. Varnado, Easterling & Varnado, George E. Dent, Jon Mark Weathers, Aultman, Tyner, Weathers & Gunn, Hattiesburg, for appellant.
Robert F. Drake, Drake & Graben, William F. Porter, Hattiesburg, for appellees.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court.
This is an appeal from the Chancery Court of Forrest County wherein the chancellor entered a final decree in favor of the plaintiff/appellees, Robert R. Royals and Judy W. Royals, and against the defendant/appellants, Universal Investment Corporation and West End Corporation. Robert R. Royals instituted this action on November 22, 1977, by the filing of a complaint in the Chancery Court of Forrest County against the City of Hattiesburg. Royals alleged that his property had been damaged due to flooding that had occurred from a drainage ditch behind his home. On March 12, 1979, he amended his complaint by adding, as a plaintiff, his wife, Judy W. Royals. Additionally, Royals added, as a defendant, J. Ed. Turner, Inc. It was alleged that the additional defendant negligently constructed a subdivision westerly of Royals property in such a manner as to alter the natural flow of surface waters. On February 12, 1980, a second amended bill of complaint was filed which added as defendants the West End Corporation, J.W. McArthur, Realtor, and J.W. McArthur, individually. The Royals alleged in their second amended bill of complaint that the West End Corporation was the developer of the property to the west of theirs which had been referred to in their first amended bill of complaint. They also alleged that the two additional defendants had negligently developed the subdivision in which the Royals lived by constructing the subsurface drainage systems in a manner so as to cause flooding and damage to the Royals.
At trial, after the Royals had presented their case, and by agreement of the parties, all defendants were dismissed with the exception of the West End Corporation and Universal Investment Corporation. After these defendants had presented their case, the chancellor returned a judgment in favor of the Royals and against the defendants, jointly and severally, in the amount of $15,000.
Both defendants have appealed and assign a number of errors which are enumerated as follows:
Universal's Assignments of Error:
1. Appellees' claim is barred by the statute of limitation.
2. The sole proximate cause of appellees' injuries was the failure of the City of Hattiesburg to properly maintain the drainage system.
3. Plaintiffs are barred by the doctrine of laches.
4. The sole cause of appellees' loss was increase in concentration of water from Heatherwood Subdivision.
5. Universal Investment Corporation is not liable to appellees, who are remote purchasers.
6. Universal Investment Corporation cannot be held liable for the actions of those who designed and constructed the drainage system.
7. Proof of damages was insufficient to justify recovery for damage to the real property.
8. Appellee Judy Royals' claims for psychological injuries were not allowable.
West End's Assignments of Error:
1. Appellant West End's engineer was an individual contractor. Consequently, West End Corp. may not be held vicariously liable for the actions of experts it hired to design the drainage system.
2. The chancellor was manifestly incorrect in granting a decree in favor of appellees because such was against the overwhelming weight of the evidence.
3. The chancellor was manifestly incorrect in granting a decree in favor of appellees because such is contrary to law of Mississippi.

*423 4. The appellees' proof of damages was too vague and insufficient to establish a basis for recovery.

STATEMENT OF FACTS
The Royals purchased a home at 3009 Navajo Circle in the Western Heights Second Subdivision in Hattiesburg, Mississippi during the month of February, 1974. This subdivision was developed by Universal Investment Corporation, J.W. McArthur, President. Universal employed Robert Morrison as an engineer in the development of Western Heights Second. The surface water drainage system of Western Heights Second consists, in part, of an open drainage ditch along the north or rear border of the Royals property. This ditch leads into a subsurface drainage system under nearby Monterrey Drive. The system includes junction boxes 29 and 30 which are situated within and beneath the surface of Monterrey Drive.
Sometime before 1974, West End Corporation began the development of Heatherwood Subdivision. Heatherwood is immediately to the west of Western Heights Second. Like Universal, West End employed Robert Morrison as the project engineer for Heatherwood Subdivision. In late 1974 the City of Hattiesburg allowed the drainage system of Heatherwood Subdivision to be tied into the drainage system of Western Heights Second, including the ditch running behind the appellee's home and the junction boxes aforementioned. On January 5, 1977, the City of Hattiesburg accepted the entire Heatherwood Subdivision for maintenance.
On February 25, 1974, the Royals moved into their home in the Western Heights Second Subdivision. They did not purchase their home from the developer, Universal, but instead bought their home from a building contractor, I.N. "Jim" Howard. At this time, the drainage ditch behind the Royals home was very small and could easily be stepped across. In the spring of 1975 and on numerous occasions thereafter, the Royals experienced flooding of their home from the drainage ditch located behind their house. Soon after the first floodings, they contacted the City of Hattiesburg which attempted to rectify the situation by widening the ditch in the summer of 1977. This measure did not solve the problem and in 1980 the Royals erected a small retaining wall along the edge of the drainage ditch behind their house and have incurred no flooding problems since.
The instant litigation was begun after the second or third flood of the Royals home. At trial, the court found that the flooding experienced by the Royals was the direct result of the defective construction of junction boxes 29 and 30 in Western Heights Second Subdivision as well as the addition of the Heatherwood Subdivision drainage system which resulted in an increased concentration and rate of concentration of surface water drainage into the open ditch behind the Royals house. The chancellor entered a decree in favor of the Royals which awarded them the amount of $15,000 for which Universal and West End were jointly and severally liable.

DISCUSSION OF ISSUES
Universal's first assignment of error is that the Royals' claim was barred by the statute of limitations. Universal contends that possession and control of the Western Heights Second drainage system passed from it no later than March 22, 1967. It reasons that inasmuch as the first bill of complaint was not filed until November 22, 1977, and inasmuch as Universal was not named as a defendant until July, 1980, the ten year statute of limitation as found in Mississippi Code Annotated § 15-1-41 (Supp. 1983) had run barring the suit.
Mississippi Code Annotated § 15-1-41 provides as follows:
No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, and no action may be brought for contribution or indemnity for damages sustained on *424 account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than ten (10) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvements by the owner thereof.
This limitation shall not apply to any person, firm or corporation in actual possession and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement causes injury.
This limitation shall not apply to actions for wrongful death.
The provisions of this section shall apply to causes of action accruing prior to June 1, 1972, but shall not revive any cause of action barred under existing law as of that date.
Section 15-1-41 was intended by the legislature to protect architects, builders and the like who have completed their jobs and who have relinquished access and control of the improvements. This section was not designed to proscribe all suits initiated ten years after completion of the defective improvement. In enacting § 15-1-41, the legislature explicitly exempted from the statute's operation "Any person, firm or corporation in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement causes injury." Miss. Code Ann. § 15-1-41 (Supp. 1983).
In DeVille Furniture Co. v. Jesco, Inc., 423 So.2d 1337 (Miss. 1982), this Court held that the ten year limitation of § 15-1-41 applied to an action by the owner of a building against the general contractor, several sub-contractors, and the architect who were all involved in the construction of the owner's roof. Therefore, the section does apply in a suit by the owner against the builder. By express provision the section also applies in a suit by an injured third party against the builder. By express limitation however, § 15-1-41 does not apply in a suit by an injured third party against the owner.
This brings us to the case at bar where the builder is also the owner. We hold that § 15-1-41 does not provide the applicable statute of limitations where the owner is the builder. We reach this result by addressing the purpose of § 15-1-41. The builder who usually no longer has control over, nor access to, the property, is absolved from liability after the proscription period; however, under the statute the owner remains responsible for the defective condition, thus insuring a plaintiff will not lose his day in court before injury ever occurs. When the builder is also the owner the distinctions which give rise to this dichotomy disappear. The builder, being the same entity as the owner, necessarily has equal access to the control over the defective condition. Consequently, a builder/owner is not within the purview of § 15-1-41.
In its brief Universal admits that the above analysis is correct. Instead, they argue that the chancellor erred in finding that ownership of the ditch remained in Universal. To quote the chancellor's holding:
That portion of the Western Heights Second drainage system [the portion which flooded the Royals' home] was completed in January, 1967, and at the date of the trial that portion of the Western Heights Second drainage system had never been accepted formally by the City of Hattiesburg for maintenance.
Having carefully examined the record, we conclude the chancellor's finding was not manifestly in error. Indeed, minutes of the Hattiesburg City Council disclose that the City expressly refused to accept the portion of the drainage ditch at issue here. Therefore, Universal's first assignment of error is without merit.
Universal's second assignment of error is that the sole proximate cause of the Royals' injury was the failure of the *425 City of Hattiesburg to properly maintain the drainage system. We note that this was a question of fact for the chancellor and in order to reverse him we would have to find his conclusions to be manifest error. Richardson v. Riley, 355 So.2d 667 (Miss. 1978). Review of the record does not reveal that the chancellor was manifestly in error. Therefore, Universal's second assignment of error is without merit.
Universal's third assignment of error is that the Royals' claim was barred by the doctrine of laches. Because the doctrine of laches is inapplicable where a claim has not yet been barred by an applicable statute of limitations, Universal's third assignment of error is without merit.
Universal next argues that the sole cause of the Royals' loss was the increase in concentration of water from the upstream Heatherwood Subdivision. As this was a matter for the chancellor to find as fact our standard of review is set out in the Richardson v. Riley case cited above. We cannot say that the chancellor was manifestly wrong in his finding that the Royals' loss was at least partially occasioned by Universal's negligence.
Universal next argues that the doctrine of privity of contract shields it from liability. Privity of contract is not properly an issue here as that doctrine, antiquated as it may be, was never intended to limit the liability of one who allows a defective condition on his own property to cause damage to the nearby property of others. As the drainage ditch remained Universal's property the doctrine of privity of contract has no application.
Universal next contends that it cannot be held liable for the actions of Robert Morrison, the engineer who designed and constructed the Western Heights drainage system, because Morrison was an independent contractor. From the court's findings it is clear that the court did not accept the notion that Morrison was an independent contractor. Under the standard of review set forth in Richardson v. Riley, supra, we do not disturb this finding of fact. Regardless, we hold that even if Morrison was an independent contractor that does not absolve the liability of Universal. This is so because the possessor of land is answerable for the negligent failure of an independent contractor to put or maintain buildings and structures thereupon in a reasonably safe condition, at least after the landowner has resumed possession of the land upon completion. Restatement 2nd Torts § 422. Disposition of this assignment of error also disposes of West End's first assignment of error.
Universal's seventh and eighth assignments of error, as well as West End's fourth assignment of error, deal with the damage award. The essence of these arguments is that the Royals' proof of damages was insufficient to recover for damage to the real property or for Judy Royals' claim of psychological damages. In addressing this contention we note that the chancellor held that the Royals were obligated to take reasonably effective action where it was available to them to minimize their damages. The court therefore considered the failure of the Royals to mitigate their damages and diminished their award to that degree. Therefore, in awarding the judgment of $15,000 the chancellor fully considered the degree and quality of proof offered by the Royals. Proof of Judy Royals' psychological damages and property damage to the Royals' property was sufficient and this Court cannot say that the chancellor was manifestly in error in finding facts sufficient to support his award. Richardson v. Riley, supra.
West End Corporation makes two other assignments of error in which it alleges that the chancellor was manifestly incorrect in granting a decree in favor of the Royals because such decree was against the overwhelming weight of the evidence and the law of the State of Mississippi. As heretofore mentioned, we cannot find the chancellor manifestly in error in determining liability or assessing the extent of damages. We also note no legal error in his ruling.
*426 Therefore, based on all of the foregoing, we hereby affirm the decision of the chancellor awarding the Royals a judgment of $15,000 against Universal Investment Corporation and West End Corporation, jointly and severally.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
SULLIVAN, J., not participating.