35 So.3d 541 (2009)
J. CRISS BUILDER, INC. and Janie Criss, Individually, Appellants,
v.
William P. WHITE and Patricia L. White, Appellees.
No. 2008-CA-00832-COA.
Court of Appeals of Mississippi.
October 13, 2009.
Rehearing Denied March 9, 2010.
Certiorari Denied May 27, 2010.
*543 Paul E. Rogers, Jackson, attorney for appellants.
John W. Christopher, attorney for appellees.
EN BANC.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On February 12, 2003, William P. White and Patricia L. White (the Whites) filed a complaint against J. Criss Builder, Inc. (JCB), Janie Criss (Criss), and Bailey Engineering and Land Surveying, LLC (Bailey) alleging breach of warranty, negligence, and failure to disclose regarding the construction of the Whites' home. Bailey was subsequently dismissed as a party. JCB and Criss moved for summary judgment alleging that the Whites did not file their complaint within the six-year statute of repose under Mississippi Code Annotated section 15-1-41 (Rev.2003). The trial court denied the motion for summary judgment. After a trial on the matter, a jury in the Madison County Circuit Court found in favor of the Whites in the amount of $30,000. The trial court granted the Whites an additur in the amount of $103,701.82.
¶ 2. JCB and Criss now appeal the judgment, arguing that: (1) this action was untimely under section 15-1-41; (2) Criss should not be held personally liable for any alleged faulty construction; and (3) it was error to grant an additur.

FACTS
¶ 3. JCB is a Mississippi corporation that was wholly owned by Criss, a licensed residential builder. JCB did not have a builder's license. Criss had a valid builder's license, which was obtained in her individual capacity. On July 30, 1996, JCB purchased the lot in Madison County, Mississippi, on which the Whites' home was constructed. As the licensed builder, Criss oversaw the construction of the home. On November 21, 1996, JCB conveyed the lot and completed home to Criss in her individual capacity. Criss lived in the home and applied for homestead exemption. On February 17, 1997, Criss sold the home to the Whites.
¶ 4. Approximately one year after the Whites moved into the home, they noticed a hairline crack in the scored concrete floor which grew larger over time. Soil testing revealed that the home was constructed upon soil containing Yazoo clay. Criss knew, prior to building, there was Yazoo clay present. The Whites repaired the foundation and other damage resulting from the foundation problems. According to expert testimony, the home suffered a $50,000 diminution of value due to these repairs.

DISCUSSION

I. STATUTE OF REPOSE
¶ 5. In their first issue on appeal, JCB and Criss argue that the trial court erred in failing to dismiss the action based upon the applicable six-year statute of repose found in Mississippi Code Annotated section 15-1-41. We note that issues of statutory interpretation present a question of law; therefore, this Court will conduct a de novo review of the trial court's decision. Grand Casino Tunica v. Shindler, 772 So.2d 1036, 1038(¶ 8) (Miss.2000).
*544 ¶ 6. Section 15-1-41 states, in pertinent part, that:
No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, and no action may be brought for contribution or indemnity for damages sustained on account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof. This limitation shall apply to actions against persons, firms and corporations performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property for ... any private ... entity.
This limitation shall not apply to any person, firm or corporation in actual possession and control as owner, tenant or otherwise of the improvement at the time the defective and unsafe condition of such improvement causes injury.
¶ 7. Since the statute of repose does not apply to circumstances where the possessor and builder are the same, it logically follows that it does not commence until the builder is no longer in possession of the home.
¶ 8. In West End Corp. v. Royals, 450 So.2d 420, 424 (Miss.1984), a homeowner sued an owner and developer of a ditch that caused his home to flood, and the issue before the supreme court was whether the then ten-year statute of repose applied where the developer was the current owner. The supreme court interpreted the second paragraph of section 15-1-41 and found that it did not apply. Id. The following passage from West End provides insight about the applicability of section 15-1-41 in situations where the builder is also the owner:

We hold that § 15-1-41 does not provide the applicable statute of limitations where the owner is the builder. We reach this result by addressing the purpose of § 15-1-41. The builder who usually no longer has control over, nor access to, the property, is absolved from liability after the proscription period; however, under the statute the owner remains responsible for the defective condition, thus insuring a plaintiff will not lose his day in court before injury ever occurs. When the builder is also the owner[,] the distinctions which give rise to this dichotomy disappear. The builder, being the same entity as the owner, necessarily has equal access to the control over the defective condition. Consequently, a builder/owner is not within the purview of § 15-1-41.
Id. (emphasis added).
¶ 9. Based on a review of the language of the statute, as well as the direction given by the supreme court in West End, the statute of repose in the present case did not commence until the builder/owner, Criss, was no longer in possession of the house. Criss, undisputably the builder, sold the home to the Whites on February 17, 1997, within six years of the filing of the complaint on February 12, 2003. Therefore, we find that the Whites' claims are not barred by the six-year statute of repose.

II. CRISS'S LIABILITY
¶ 10. In their second issue on appeal, JCB and Criss argue that the trial *545 court erred by failing to dismiss Criss, individually, from the lawsuit. JCB and Criss contend that "the only way Janie Criss as an individual can be held liable... is by proper piercing of the corporate veil of J. Criss Builder, Inc." We should note that the present cause of action was not filed under a veil-piercing theory, and none of the parties requested that the court instruct the jury on piercing the corporate veil. Instead, while discussing the issue of corporate versus individual liability, the attorney representing JCB and Criss told the trial court:
We don't have a veil[-]to[-]pierce instruction. You have to prove by clear and convincing evidence flagrant disregard of corporate formalities, frustration of purpose and some fraud or other [malfeasance] on behalf of [Criss.] We don't have that in this case. This is not a veil[-]piercing case. It's no different than if a corporate employee was driving a car and had a wreck and they were negligent. They're liable for their own actions.
¶ 11. After much discussion between the parties and the court, the trial court crafted the following jury instruction, which the parties agreed adequately covered the contested issue of Criss's individual liability:
An officer, director and/or shareholder of a corporation is not generally held personally liable for the acts of the corporation. An officer, director, and/or shareholder of a corporation may be held personally liable for the acts of the corporation by her own acts or conduct. If you find by a preponderance of the credible evidence presented in this case that at the time the subject house was being built that Janie Criss was acting solely on behalf of J. Criss Builder, Inc., and not individually then your verdict shall be in favor of Janie Criss in her individual capacity.
¶ 12. Based upon the jury's verdict against JCB and Criss, individually, it is reasonable to find that the jury found that Criss was acting on her own behalf when she built the house.
¶ 13. Under Mississippi law, residential builders must be licensed by the State Board of Contractors. Mississippi Code Annotated section 73-59-3(1) (Rev.2008)[1] provides, in pertinent part, that "persons who perform residential construction or residential improvement shall be licensed by the board annually[.]" Corporations or individuals are deemed residential builders for purposes of this statute. See Miss. Code Ann. § 73-59-1(b) (Rev.2008).[2] Criss's corporate entity, JCB, did not have a builder's license; thus, it was prohibited from performing residential construction. See Miss.Code Ann. § 73-59-9(3) (Rev. 2008).[3] Criss did, however, have a valid builder's license, which was obtained in her individual capacity. Criss, in her individual capacity, was the licensed builder of the house. According to her testimony, Criss's job duties included designing the house plans, arranging financing, coordinating the subcontractors, selecting building materials, negotiating prices with suppliers, choosing paint colors, selecting roof types, working with engineers to design the foundation, and overseeing the dirt *546 work on the lot to make sure it was handled properly.
¶ 14. Since Criss was the licensed builder and JCB was legally prohibited from performing residential construction, we cannot find that the trial court erred in declining to dismiss Criss, individually, from the suit. The jury clearly found that Criss was personally liable for the construction of the home. This issue is without merit.

III. ADDITUR
¶ 15. In the final issue on appeal, JCB and Criss argue that the trial court erred in granting an additur. After the jury awarded the Whites $30,000, the Whites filed a motion for an additur. The trial court found that the Whites were entitled to an additur in the sum of $103,701.82. Pursuant to Mississippi Code Annotated section 11-1-55 (Rev.2002), the court may grant an additur, "if the court finds that the damages are ... inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence."
¶ 16. The standard of review for considering an additur on appeal is limited to determining whether the trial court abused its discretion. Ross-King-Walker, Inc. v. Henson, 672 So.2d 1188, 1193 (Miss. 1996). The trial court may only usurp the jury's function in setting a damage award, when it complies with the language of the statute and finds either that: (1) the jury's verdict is so shocking to the conscience that it evinces bias, passion, and prejudice on the part of the jury; or (2) the verdict is contrary to the overwhelming weight of the credible evidence. State Highway Comm'n of Miss. v. Warren, 530 So.2d 704, 707 (Miss.1988). "Absent either of these findings, the trial court abuses its discretion." Id.
¶ 17. The trial court's order granting the additur simply finds that the "motion [was] well taken and should be granted." Because the trial court did not indicate its specific findings in granting the additur, we find this to be an abuse of discretion. However, this does not preclude the trial court, on remand, from granting the additur. Rather, if the trial court chooses so, there must be adequate findings to support the additur. Accordingly, we remand the case to the trial court to either reinstate the jury's verdict or consider the additur in accordance with the applicable statutory guidance.
¶ 18. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE APPELLANTS AND APPELLEES.
KING, C.J., MYERS, P.J., IRVING, BARNES AND ISHEE, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J. CARLTON, J., NOT PARTICIPATING.
GRIFFIS, J., Dissenting.
¶ 19. I respectfully dissent because I find that William and Patricia White's (collectively "the Whites") claims are time-barred by Mississippi Code Annotated section 15-1-41 (Rev.2003). Accordingly, I would reverse the judgment of the Madison County Circuit Court and render judgment in favor of J. Criss Builder, Inc. ("JCB") and Janie Criss ("Criss") dismissing the Whites' claims.
*547 ¶ 20. JCB and Criss argue that the statute of repose began to run under section 15-1-41 on November 23, 1996, when Criss purchased the home and occupied the home. The Whites argue that the legislative intent behind section 15-1-41 is that the statute does not begin to run until the builder relinquishes access and control to a third party.
¶ 21. "It is a well[-]recognized principle of law in this State that ambiguity must exist in the language used by the Legislature in a statute before resort will be had to any rules of statutory construction or interpretation." Forman v. Carter, 269 So.2d 865, 868 (Miss.1972). This Court must begin our inquiry with the plain language of section 15-1-41, which states, in pertinent part, that:
No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, and no action may be brought for contribution or indemnity for damages sustained on account of such injury except by prior written agreement providing for such contribution or indemnity, against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof. This limitation shall apply to actions against persons, firms and corporations performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property for the State of Mississippi or any agency, department, institution or political subdivision thereof as well as for any private or nongovernmental entity.
(Emphasis added.)
¶ 22. The Whites urge this Court to look beyond the plain language of the statute to the Legislature's intent and argue that "[s]ection 15-1-41 was intended by the [L]egislature to protect architects, builders and the like who have completed their jobs and who have relinquished access and control of the improvements." Ferrell v. River City Roofing, Inc., 912 So.2d 448, 453(¶ 13) (Miss.2005) (quoting West End Corp. v. Royals, 450 So.2d 420, 424 (Miss.1984)). The Whites stress that this Court must consider Criss to be the builder within the meaning of section 15-1-41, because she was licensed as required by Mississippi Code Annotated section 73-59-3(1) (Rev.2008), and JCB did not have a builder's license. The Whites claim that the builderCrissdid not relinquish control of the home until she sold it to the Whites.
¶ 23. I find that section 15-1-41 is not ambiguous when applied to a situation where a builderCrissbuilds a home for the original ownerJCBand subsequently purchases the home. The statute does not use "relinquish control" as a test to determine whether the statute begins to run; rather, the statute states that "written acceptance or actual occupancy or use" by the owner triggers the statute. Here, Crisseven if considered the builder purchased the completed home from JCB and actually occupied and used the home in her personal capacity.
¶ 24. While the supreme court has determined that the intent behind section 15-1-41 is to protect architects, builders and the like who have completed their jobs and who have relinquished access and control of the improvements, the statute makes no exception to the six-year statute of repose if a builder or architect subsequently accepts, *548 actually occupies, or uses the home. The plain language of the statute states that the statute of repose starts to run from the time of "written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof." Miss.Code Ann. § 15-1-41. The supreme court "requires occupancy or acceptance of the building or improvement made thereon as the beginning point for the tolling of the statute of [repose]." McMichael v. Nu-Way Steel and Supply, Inc., 563 So.2d 1371, 1376 (Miss.1990). The Whites do not dispute that Criss purchased the home on November 21, 1996, and resided therein beginning on November 23, 1996, and filed for homestead exemption.
¶ 25. The majority, by following the Whites' argument, creates a scenario where the statute of repose could begin to run on two different dates, depending on who the claim was against. Here, the Whites ask this Court to find that the statute of repose began to run when Criss sold the house to them, because Criss maintained control during the time that she occupied the home as her residence. But the architect who designed the home would not have maintained control over the home during Criss's ownership and occupancy, so the statute of repose would have started at some other date with respect to the architect.
¶ 26. The majority relies on West End Corp., 450 So.2d at 424 as authority for their position that section 15-1-41 does not apply when the builder purchases the home from the original owner. There, the issue was whether the West End Corporation was liable to Robert and Judy Royals for flooding to their home due to a drainage system built and continuously owned by West End. Id. West End argued that it did not possess or control the drainage ditch because ownership had passed to the City of Hattiesburg, Mississippi. Id. The supreme court found that the drainage system had never passed to the City and stated that:
We hold that § 15-1-41 does not provide the applicable statute of limitations where the owner is the builder. We reach this result by addressing the purpose of § 15-1-41. The builder who usually no longer has control over, nor access to, the property, is absolved from liability after the proscription period; however, under the statute the owner remains responsible for the defective condition, thus insuring a plaintiff will not lose his day in court before injury ever occurs. When the builder is also the owner the distinctions which give rise to this dichotomy disappear. The builder, being the same entity as the owner, necessarily has equal access to the control over the defective condition. Consequently, a builder/owner is not within the purview of § 15-1-41.
Id. The supreme court held that the builder/owner of a drainage system was liable to a third party when the builder maintained possession and control of the drainage system from the time it was constructed until the time that the suit was filed by a third party. Id. West End is factually distinguishable from this case; there, the builder/owner never relinquished possession or control to anyone. Here, the original owner, JCB, did relinquish control to Criss in her individual capacity, and she did show actual occupancy of the home.
¶ 27. Therefore, I would not extend this exception, based on legislative intent, beyond the factual situation in West End. Instead, effect should be given to section 15-1-41, and I would hold that the statute of repose began to run when Criss purchased the home in her individual capacity from the ownerJCBbecause she showed actual occupancy and use when she *549 used the home as her personal residence and applied for a homestead exemption.
ROBERTS, J., JOINS THIS OPINION.
NOTES
[1] Mississippi Code Annotated section 79-59-1 to -21 was set to repeal effective July 1, 2009. However, the Legislature has reenacted the statute in 2009 and amended section 79-59-3. See 2009 Miss. Laws Ch. 556 (H.B. 8). The language quoted from section 79-59-3 was not changed.
[2] See n. 1. The language in 73-59-1 was not changed.
[3] See n. 1. The language in 73-59-9 was not changed.